Filed 4/4/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ARTHUR R. YOUNG et al., as Trustees, etc., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF CORONADO et al., <br><br> Defendants and Respondents. | D070210 <br><br><br> (Super. Ct. No. 37-2014-00037469-CU-EI-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

Schwartz Hyde & Sullivan and Kevin P. Sullivan for Plaintiffs and Appellants.

McDougal Love Eckis Boehmer & Foley, Steven E. Boehmer and Randall R. Sjoblom for Defendants and Respondents.

I.

INTRODUCTION

Appellants Arthur R. Young and John A. Young, as Trustees and on behalf of the J.S. Abbott Trust, sought a permit to demolish a small cottage on a parcel of land located in Coronado, California (the City).  Because the cottage was more than 75 years old, the

Coronado Historic Resource Commission (Commission) reviewed the property for potential historical significance. The Commission ultimately concluded that the dwelling should be designated as a historic resource under the Coronado Municipal Code (the CMC). Appellants appealed the determination to the Coronado City Council, which agreed with the Commission's assessment and affirmed the property's designation as a Coronado historic resource. The effect of this designation is to place additional limits on a property owner's ability to alter or demolish the property without taking certain ameliorative steps and/or demonstrating a heightened need for the action pursuant to Chapter 84.20 of the CMC.

Appellants filed a petition for a writ of mandate in the trial court, seeking review of the City's designation of the property as a historic resource. The trial court denied appellants' petition.

Appellants now seek review of the trial court's denial of their petition for mandate. Appellants contend that the City abused its discretion in denying them a demolition permit for the dwelling on the subject property. Appellants argue that the City Council's resolution failed to contain sufficient findings to support the conclusion, the City failed to apply its own mandatory guidelines in holding the hearing and making its findings, and the findings are not supported by sufficient evidence.

We conclude that the appellants have not established that the City abused its discretion in designating the dwelling subject property as a historic resource and denying a demolition permit. We therefore affirm the judgment of the trial court.

2

II.

FACTUAL AND PROCEDURAL BACKGROUND

In late December 2013, appellants filed an application form with the City titled "Determination of Historic Significance (For Nomination for Historic Designation and Notice of Intent to Demolish Review)" regarding the subject property, which is located on Glorietta Boulevard.  Appellants filed the application seeking City approval to demolish the dwelling on the property in order to improve the property.  Because the dwelling at issue is more than 75 years old, the City was required, pursuant to the City's historic preservation ordinance, to undertake a review of the historic significance of the property before granting a demolition permit.  Appellants' application form identified the subject dwelling on the property as having been constructed in 1924 and reflecting a "Simplified Spanish Revival" architectural style.  The application indicated that the dwelling had not had any major alterations made to it.  Accompanying the application were documents describing the prior ownership of the property, its permit history, documents related to the J.S. Abbott Trust, and photographs of the property.

In compliance with the CMC, a hearing was set before the Commission on January 15, 2014.  The purpose of the hearing was for the Commission to consider whether the property qualified as a historic resource pursuant to the historic designation criteria set forth in the CMC.[1]  In conjunction with the public hearing, City staff submitted a report

---

1    Pursuant to the CMC, a "resource" that is over 75 years old (or has achieved historic significance within the past 75 years) and meets at least two of the following five criteria may be designated as a "historic resource" by the Commission:

3

regarding the subject property, dated January 15, 2014, which included information

discovered by City staff in researching the history of the property.  The City staff report

indicated that there was no evidence to support a finding that the subject dwelling met

Criteria A, B, or E of section 84.10.030 of the CMC.  However, City staff identified

evidence that could support findings that the dwelling met Criterion C and Criterion D.

For example, with respect to Criterion C, the City staff report stated the following:

> "Examination of the form, details, and finish of the dwelling indicate that the dwelling is representative of the trend toward construction of Period Revival architectural styles during the 1920s and 1930s, specifically the Spanish Bungalow style.  Period Revival styles took the details and architectural characteristics of high-style architectural trends and simplified them for smaller homes.  One familiar example of this is the simplification and popularization of high-style Spanish Colonial architecture after the Panama-Californian Exposition in 1915, resulting in the large numbers of Spanish Bungalows that are seen throughout Coronado and the San Diego region.

---

> "A. It exemplifies or reflects special elements of the City's military, cultural, social, economic, political, aesthetic, engineering, or architectural history;
>
> "B. It is identified with a person(s) or an event(s) significant in local, State or national history;
>
> "C. It possesses distinctive characteristics of an architectural style, and is valuable for the study of a type, period, or method of construction and has not been substantially altered;
>
> "D. It is representative of the notable work of a builder, designer, architect, artisan or landscape professional;
>
> "E. It has been listed on or formally determined eligible for the California Register, as set forth in Section 5024.1 of the California Public Resources Code (as amended from time to time)."  (CMC, § 84.10.030.)

"The subject dwelling features many character defining features of the Spanish Bungalow style, such as a flat roof and parapet, a stucco exterior finish, and simple square plan. The street-facing elevation has a large multi-light focal window. A stucco chimney is present on the side elevation with a decorative detail, and is finished in stucco. The dwelling features a recessed front entry with double multi-light French doors. Original wood windows appear to be present throughout.

"The dwelling retains a high degree of architectural integrity, as it has not been visibly altered since its construction, and appears to be significant under Criterion C as an example of the Spanish Bungalow style."

With respect to Criterion D, the City staff report notes, with reference to attachments regarding other properties that had been built by the same builder, that:

"The dwelling was constructed by the Hakes Investment Company. Additional information about buildings constructed by Hakes Investment Company is included in Attachment 3.

"The property is unmodified from its original appearance as constructed by the Hakes Investment Company, and may be considered historically significant under Criterion D."

The attachments included photographs of 21 homes that the Hakes Investment Company (Hakes) had built in the City. Three of the identified Hakes-built residences had been designated as historic resources, four others had been reviewed but not designated as historic resources, and fourteen had not yet been subject to historic designation review. The attachment also provided a list of six other Hakes-built homes that had been demolished prior to undergoing historic designation review. Thus, staff research suggested that Hakes had built at least 27 homes in the City.

At the hearing, a City staff member orally presented additional information regarding the property to the Commission. In response to a question from one

5

commissioner regarding Hakes and the "notability" requirement with respect to Criterion D, the City staff member responded:

> "Well, Item D --Criterion D states that the property should be an example of the notable work of a builder. So when you're looking at Criterion D, you're not looking at whether or not the builder is notable or not; you're looking at whether or not the work is notable, and that's pretty broad. [¶] You can determine that a work is notable for any number of reasons. As I stated in the staff report, the property is unmodified from its original appearance, so that could make it a notable work as so many buildings of that age are now modified from their original appearance."

Following the staff presentation, which reiterated much of what was in the written report, appellants briefly addressed the Commission and answered questions. Appellants explained that the home had been a rental property "almost all of its life," and that they believed that the property "isn't contributing much," and "doesn't really add to Glorietta."

Upon the closure of the public portion of the hearing, the commissioners deliberated and concluded that the subject property qualified for historic designation pursuant to Criterion C, because the property exemplified the distinctive characteristics of the Spanish Bungalow architectural style, as well as under Criterion D, because the property was a notable work of Hakes. The Commission passed Resolution No. HR 2-14 (Resolution HR 2-14), which included the following statements:

> "WHEREAS, evidence was submitted and considered to include without limitation:
>
> "1. Notice of intent to Demolish Permit Application dated November 25, 2013;
>
> "2. Oral testimony;

6

"3. Historic Resource Commission staff report dated January 15, 2014;

"4. Additional written information and photographs provided by the applicant;

"NOW, THEREFORE, BE IT RESOLVED that the Historic Resource Commission of the City of Coronado finds the property as described in the application submittal dated November 27, 2013, shall be designated as a Historic Resource because it meets the following criteria:

"c) It possesses distinctive characteristics of the Spanish Bungalow architectural style, and is valuable for the study of a type, period, or method of construction and has not been substantially altered;

"d) It is representative of the notable work of the builder, the Hakes Investment Company because it is a strong example of the work they did throughout Coronado."

Appellants appealed the Commission's historic designation of the subject property to the City Council. In describing the basis for the appeal, appellants asserted that the subject property did not meet either Criterion C or D, despite the Commission's conclusions. With respect to Criterion C, Petitioners argued that the Commission had not addressed the provision of Criterion C that the dwelling be valuable for study. In addition, they noted that another similar dwelling constructed by the same builder and with the same architectural features such as a flat roof, stucco walls, wood frame windows, and decorative details had previously been designated not historic. Appellants contended that no architectural features on the home required study because they could be found on numerous other buildings within the City.

7

With respect to Criterion D, Appellants claimed that the dwelling was not "notable" because most homes on the same street possess a picture window, another property by the builder that was not designated a historic resource had a similar arch-topped picture window, and the Commission failed to identify any specific aspect of the home that was notable. Appellants observed that other works by the same builder with similar architectural details had not been designated as historic resources.

An appeal hearing was conducted before the City Council on March 4, 2014.

In reviewing appellants' appeal of the Commission's decision, the City Council considered the City staff report regarding the subject property. The City Council also listened to an oral presentation by a City staff member, during which the staff member described the historic designation process, the proceeding that had been held before the Commission regarding the subject property, as well as the Commission's findings with respect to the subject property. In addition, two commissioners appeared and spoke at the City Council hearing.

The City Council also heard from appellants Arthur Young and John Young, as well as a local architect who appeared on behalf of appellants. It was this architect's opinion that the dwelling did not meet either Criterion C or Criterion D, in particular because the dwelling seemed to him to be very similar to other dwellings by the same builder that the City had "allowed to be demolished."

Upon the conclusion of the public comment portion of the hearing, the City Council closed the public hearing and deliberated. During this closed meeting, Councilmember Bailey noted that he had discussed the subject property with Ledge

8

Hakes, a "part owner in the Hakes Investment Company." According to Councilmember Bailey, Ledge Hakes said "that he did not feel this house was representative of his work and also responded that he did not feel that his work was more notable than any other -- any other developers at that time."

After deliberation, the City Council voted 3-1, with one abstention, to uphold the Commission's decision to designate the subject property a historic resource under the CMC. The City Council passed Resolution No. 8654 (Resolution 8654) confirming the historical resource designation. Along with a review of the procedural history of appellant's demolition permit request, Resolution 8654 includes the following:

> "WHEREAS, evidence was submitted and considered to include without limitation:
>
> "1. City Council staff report dated March 4, 2014[2];
> "2. Appeal dated January 24, 2014;
> "3. Oral testimony;
> "4. Additional written information, exhibits and photographs provided by the appellant.
>
> "NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Coronado as follows:
>
> "Section l. The foregoing recitals are true and correct
>
> "Section 2. By a vote of 3 in favor and 1 opposed, the City Council of the City of Coronado hereby denies the appeal and upholds the decision of the Historic Resource Commission finding the dwelling as described in the City Council staff report dated March 4, 2014, shall be designated as a Coronado Historic Resource because it is

_____

2      Although Resolution 8654 refers to a "City Council staff report dated March 4, 2014," the staff recommendations from that date, which are incorporated into a document titled "Agenda" for the City Council for March 4, 2014, appear to be taken from the staff report dated January 15, 2014.

9

over 75 years old and meets the following adopted designation criteria:

"c) It possesses distinctive characteristics of the Spanish Bungalow architectural style, and is valuable for the study of a type, period, or method of construction and has not been substantially altered;

"d) It is representative of the notable work of the builder, the Hakes Investment Company, because it is a strong example of the work they did throughout Coronado."

Resolution 8654 also requires that any alterations to or demolition of the residence be undertaken only pursuant to "a historic resource alteration permit issued pursuant to Chapter 84.20 of the Coronado Municipal Code."  Appellants' original application for a demolition permit for the subject residence was effectively denied as a result of the decision to designate the property a historic resource.

In late October 2014, appellants filed a petition for a writ of mandate, pursuant to Code of Civil Procedure section 1094.5, to void the City's decision to designate the subject dwelling as a historic resource.[3]

The trial court held a hearing on the petition for a writ of mandate on February 11, 2016.  At the conclusion of the hearing, the trial court determined that appellants had failed to establish a basis for the requested writ of mandate, concluding that the City had proceeded in a manner required by law in issuing its findings and conclusions regarding the designation of the subject property as a historical resource, and further concluding that the City's findings were supported by substantial evidence in the administrative

_____

[3]    Appellants initially also sought damages against the City pursuant to two additional causes of action.  Appellants later dismissed these claims, leaving only the petition for writ of mandate to be resolved by the trial court.

10

record.[4]  Based on these conclusions, the trial court denied appellants' petition for a writ of mandate.

The trial court entered a statement of decision on March 4, 2016.  Judgment was entered on April 26, 2016.  Appellants filed a timely notice of appeal.

III.

DISCUSSION

Appellants challenge the determination of the City that the subject property meets the City's standards for designation as a historical resource.  Specifically, appellants assert that they are entitled to relief pursuant to Code of Civil Procedure section 1094.5, subdivision (b) because the City failed to "follow the law that requires sufficient findings to support the denial decision," in that "no required record evidence or support for the findings was incorporated into the Resolution No. 8654 as the Trial Court asserted, no presumptions about sufficiency of the findings apply, and the City failed to apply its mandatory Guidelines as part of the demolition permit decision."  Appellants also contend that the inadequate findings are not supported by the evidence.

A.  *Administrative mandamus*

Code of Civil Procedure section 1094.5, the state's administrative mandamus provision, provides the procedure for judicial review of adjudicatory decisions rendered by administrative agencies.  (*Topanga Assn. for a Scenic Community v. County of Los*

_____

4     In ruling on the petition, the trial court granted judicial notice of portions of the CMC, portions of the City's "Historic Designation Criteria Guidelines," and certain Minutes of City Council Meetings, as requested by appellants.

11

*Angeles* (1974) 11 Cal.3d 506, 514 (*Topanga I*).) Pursuant to Code of Civil Procedure section 1094.5, subdivision (b), "[t]he inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." Further, "in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).)

The scope of review of supporting evidence for abuse of discretion depends on whether the decision substantially affects a fundamental vested right. (Code Civ. Proc., § 1094.5, subd. (c).) Where the public agency's decision affects a fundamental vested right, the trial court exercises independent judgment in assessing whether the evidence is sufficient to support the agency's findings. (*Molina v. Board of Administration, etc.* (2011) 200 Cal.App.4th 53; *Zink v. City of Sausalito* (1977) 70 Cal.App.3d 662, 665.) In such cases, the court conducts a limited trial de novo and "abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (Code Civ. Proc., § 1094.5, subd. (c); *Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 320.) "In all other cases, abuse of discretion is established if

12

the court determines that the findings are not supported by substantial evidence in the light of the whole record."  (Code Civ. Proc., § 1094.5, subd. (c).)

Where, as here, the underlying administrative mandamus case does not involve a fundamental vested right, on appeal " 'we review the administrative decision, not the superior court's decision.' "  (*Kolender v. San Diego County Civil Service Com.* (2007) 149 Cal.App.4th 464, 470, italics omitted; *Dore v. County of Ventura* (1994) 23 Cal.App.4th 320, 327 (*Dore*) ["Our role [on appeal] is to consider whether the administrative agency committed a prejudicial abuse of discretion by examining whether the findings support the agency's decision and whether substantial evidence supports the findings in light of the whole record"].)[5]

"[T]he petitioner in an administrative mandamus proceeding has the burden of proving that the agency's decision was invalid and should be set aside, because it is presumed that the agency regularly performed its official duty.  When the standard of review is the substantial evidence test . . . it is presumed that the findings and actions of

---

5    No one in this case has argued that the Commission's decision to declare the subject property a historic resource involves a fundamental vested right, and given the nature of the administrative action here, we agree that the substantial evidence test is applicable.  (See *Cadiz Land Co., Inc. v. Rail Cycle* (2000) 83 Cal.App.4th 74, 111 [acknowledging that courts have rarely applied independent judgment test to land use decisions]; see also, e.g., *California Aviation Council v. City of Ceres* (1992) 9 Cal.App.4th 1384, 1394 [fundamental rights not affected by decision to overrule airport land use commission and enact ordinance permitting residential construction near airport]; *Siller v. Board of Supervisors* (1962) 58 Cal.2d 479, 484 [no vested right is affected by the denial or granting of a zoning variance]; *Saad v. City of Berkeley* (1994) 24 Cal.App.4th 1206, 1212–1213 [no vested right to build a single-family residence]; *Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 334 (*Desmond*) [applying substantial evidence standard to review of administrative denial of land use permit for second residential unit].)

the administrative agency were supported by substantial evidence.  [Citations.]  Thus, since the same standard of review applies now on appeal as it did in the trial court, the burden is on appellant to show there is no substantial evidence whatsoever to support the findings of the Board."  (*Desmond*, *supra*, 21 Cal.App.4th at pp. 335–336.)

Finally, our review is not designed to rectify an imprudent decision by an administrative agency.  Administrative mandamus is not to be used to control the discretion of an administrative body, but only to ensure that it was not abused.  (See Code Civ. Proc., § 1094.5, subd. (f); *Kaiser Foundation Hospitals v. Belshé* (1997) 54 Cal.App.4th 1547, 1558 [under traditional or administrative mandamus principles, "[a] writ cannot be used to control a matter of discretion"]; *Dore*, *supra*, 23 Cal.App.4th at pp. 326–327 ["Because the administrative agency has technical expertise to aid it in arriving at its decision, we should not interfere with the discretionary judgments made by the agency"].)  It is for the agency to weigh the preponderance of conflicting evidence, "as we may reverse its decision only if, based on the evidence before it, a reasonable person could not have reached the conclusion reached by it."  (*Kirkorowicz v. California Coastal Com.* (2000) 83 Cal.App.4th 980, 986 (*Kirkorowicz*); *Sierra Club v. California Coastal Com.* (1993) 12 Cal.App.4th 602, 610.)

B.  *Analysis*

    1.  *The City's findings are legally sufficient to meet the requisite legal standards*

Appellants raise a number of related contentions, all in an attempt to establish that the City did not make legally sufficient "findings" to support its decision to designate the

subject property a historic resource. For example, appellants assert that (1) Resolution 8654 failed to contain the "required sufficient findings about how [the City] reached its decision" and "instead just mostly repeated the City's code as the findings," (2) there is "no required record evidence or support for the findings . . . incorporated into the Resolution No. 8654 as the Trial Court asserted," (3) "no presumptions about sufficiency of the findings apply" in this scenario, and (4) "the City failed to apply its mandatory Guidelines as part of the demolition permit decision." In sum, appellants' principal contention throughout this appeal is that the City's two resolutions, i.e., the Commission's Resolution HR 2-14 and the City Council's Resolution 8654, failed to comply with the law under *Topanga I* because they failed to state "sufficient findings" to support the City's determination.[6]

In *Topanga I*, our Supreme Court held that in administrative proceedings for which judicial review is available pursuant to administrative mandamus proceedings under Code of Civil Procedure, section 1094.5, "the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and [the] ultimate decision or order." (*Topanga I*, *supra*, 11 Cal.3d at p. 515.) "Among other functions, a findings requirement serves to conduce the administrative body to draw

---

6    Appellants also note that the City's own municipal code requires that any determination made on a demolition permit request for a potential historical resource include "findings, reasons and facts for said determination" as to the historic status of the resource. (CMC, § 84.20.050.) CMC, section 84.20.050 provides that "[n]o later than 21 days following the close of a public hearing, the Historic Resource Commission shall, by resolution, determine whether the structure meets the criteria to be a historic resource with findings, reasons and facts for said determination."

15

legally relevant sub-conclusions supportive of its ultimate decision; the intended effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions." (*Id.* at p. 516.) "In addition, findings [made by an administrative agency] enable the reviewing court to trace and examine the agency's mode of analysis." (*Ibid.*) The administrative body's "findings 'need not be stated with the formality required in judicial proceedings.' " (*Id.* at p. 517, fn. 16.) However, *Topanga I* counsels that the findings "must expose the board's mode of analysis to an extent sufficient to serve the purposes" of the need for findings. (*Ibid.*) As a result, in a footnote, the *Topanga I* court disapproved of two prior cases that had approved of the agency practice "of setting forth findings solely in the language of the applicable legislation." (*Ibid.*) Rather, the findings should "enable the parties to the agency proceeding to determine whether and on what basis they should seek review." (*Id.* at p. 517.)

In applying *Topanga I*, courts have stated that "[a]dministrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.) An agency's findings under Code of Civil Procedure section 1094.5 "*do not need to be extensive or detailed*." (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 516, italics added.) "In addition, findings are to be liberally construed to support rather than defeat the decision under review." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1989) 214 Cal.App.3d 1348, 1356 (*Topanga II*).)

16

The nature of the statute, ordinance, or rule being applied by that agency is also relevant to the analysis of the adequacy of an administrative agency's findings. In *Topanga I*, the statute at issue allowed the permitting authority to grant a variance " 'only when, because of *special* circumstances applicable to the property, . . . the strict application of the zoning ordinance deprives such property of privileges enjoyed by other property in the vicinity and under identical zoning classification.' " (*Topanga I*, *supra*, 11 Cal.3d at p. 520.) Therefore, the state law at issue in *Topanga I* "require[d] a comparative analysis of the zoned properties." (*Sierra Club v. City of Hayward* (1981) 28 Cal.3d 840, 858 (*Sierra Club*).) However, the findings made by the administrative agency did not establish that a comparative analysis had been completed. Thus, although the evidence in the administrative record in *Topanga I* might have supported the granting of a variance on the basis of a comparative analysis, the *Topanga I* court concluded that the planning commission's decision at issue in that case was defective because it set forth only the characteristics of the property to be developed, and contained no comparative information regarding the property and neighboring land sufficient to justify a variance. (*Topanga I*, *supra*, at p. 520.) However, following *Topanga I*, appellate courts have concluded that when a zoning ordinance authorizes an agency to approve a conditional use only *upon making specified factual findings*, *Topanga I* does not prevent the agency from stating those findings in the language of the ordinance, nor does it require that the agency support those findings with subfindings. (*Levi Family Partnership, L.P. v. City of Los Angeles* (2015) 241 Cal.App.4th 123, 132 (*Levi Family Partnership*).)

17

Thus, in upholding the agency's findings, the court in *Jacobson v. County of Los Angeles* (1977) 69 Cal.App.3d 374 (*Jacobsen*) stated: "We do not . . . find anything in footnote 16 [of *Topanga I*] criticizing 'the practice of setting forth findings solely in the language of the applicable legislation,' which requires invalidating findings in the language of the applicable ordinance in all cases. . . . The requirement that the administrative decision disclose the 'legally relevant sub-conclusions supportive of its ultimate decision' [citation] can be fully met by findings in the language of the ordinance *when the ordinance requires that the relevant sub-conclusions be specifically stated*. The [ordinance] does just that. It requires the zoning board to reach seven specific subconclusions and, moreover, it describes these as the 'findings' which must be made. It would be a reduction to absurdity of the principle stated in *Topanga* [*I*] to apply it to findings made in the language of an ordinance which thus requires full articulation of the factors upon which the decision is based." (*Jacobson*, *supra*, 69 Cal.App.3d at p. 391, italics added.)

Similarly, in *Topanga II*, *supra*, 214 Cal.App.3d at p. 1363, a developer sought a conditional use permit for a hillside housing development pursuant to section 22.56.215(F) of the Los Angeles County Code. That provision authorized the grant of a permit "only when the applicant 'substantiate[s] to the hearing officer' certain specified facts." (*Levi Family Partnership*, *supra*, 241 Cal.App.4th at p. 133.) The Los Angeles County Board of Supervisors issued a decision approving a conditional use permit, and on review of that determination, the appellate court concluded that the findings in the Board of Supervisor's decision were adequate, even though they were set forth solely in

18

the language of section 22.56.215(F).  (*Topanga II*, *supra*, at p. 1363.)  The relevant county ordinance at issue in *Topanga II* provided:  " 'Burden of Proof.  The application for a conditional use permit-hillside management and significant ecological areas shall substantiate to the hearing officer the following facts,' " and presumably listed the relevant facts requiring substantiation.  (*Ibid.*)  The *Topanga II* court explained:  "Unlike the county ordinance discussed in *Jacobson*, section 22.56.215(F) does not specify that the facts enumerated therein constitute the findings which must be made.  The rationale of *Jacobson* nevertheless applies to section 22.56.215(F).  Implicit in that ordinance is the condition that the permit may not be approved unless the facts set forth in the ordinance have been proved.  Accordingly, the board properly made its findings in the language of section 22.56.215(F).  It would exact needless time, effort and ingenuity to require the board to paraphrase the provisions of section 22.56.215(F) in making findings in support of its approval of a conditional use permit.  We refuse to impose such a requirement which, in addition to causing wasted time and effort, likely would result in inadvertent omissions or misstatements of necessary facts."  (*Id.* at pp. 1363-1364.)

Appellants argue that the findings made by the Commission and the City Council in the resolutions at issue in this case do not meet the *Topanga I* standard.  According to appellants, the two resolutions at issue here are "conclusory," "failed to state any reasons or facts to support the determination," and merely "parroted the language of the Code."  We disagree, and conclude that Resolution HR 2-14 and Resolution 8654 meet the standards required for administrative decision-making.

19

First, because the historic designation criteria set forth in the CMC identify a number of specific findings that must be made before the City may designate a property as a historic resource, a resolution that adopts the language of the relevant portions of section 84.10.030 of the CMC would be sufficient, even under *Topanga I*. (See *Jacobson*, *supra*, 69 Cal.App.3d at p. 391.) Specifically, the CMC requires that in order to designate a resource as a historic resource, the City must find that the property at issue is at least 75 years of age and meets at least two of the five identified criteria, each of which requires its own set of findings. The City determined that the subject property met Criterion C and Criterion D. To meet Criterion C, the City must find that the subject property "possesses distinctive characteristics of an architectural style, and is valuable for the study of a type, period, or method of construction and has not been substantially altered." (CMC, § 84.10.030.) To meet Criterion D, the City must find that the subject property "is representative of the notable work of a builder, designer, architect, artisan or landscape professional." (CMC, § 84.10.030.) Thus, the ordinance at issue here, similar to the county ordinance at issue in *Topanga II*, requires the administrative agency to make certain findings of facts, as identified in the listed criteria. Specifically, the agency must make findings of fact that the subject resource meets the standards set forth in at least two out of the five listed criteria, each of which may require one or more findings of fact.[7] Because of the nature of the ordinance at issue here, and its requirement that the

---

[7] By way of example, Criterion C requires at least three findings of fact: (1) that the resource possesses "distinctive characteristics of an architectural style," (2) that the resource is "valuable for the study of a type, period, or method of construction," and

City make specific findings of fact in order to designate a resource as historically significant, a resolution that incorporates findings that reflect the ordinance's language could sufficiently inform the parties of the analytical path adopted by the administrative agency in reaching its ultimate conclusion—i.e., the conclusion that the subject property is a historically significant resource.

However, even if one were to conclude that a mere recitation of statutory language of the CMC's relevant historic designation criteria would *not* be sufficient, it is clear that the City made additional factual findings that further bridged the analytic gap between the raw evidence and the City's ultimate decision to designate the subject property a historic resource. For example, Resolution HR 2-14 and Resolution 8654 both include findings *specific to the property at issue*. With respect to Criterion C, the Commission and the City Council both found that the subject property "possesses distinctive characteristics of the Spanish Bungalow architectural style, and is valuable for the study of a type, period, or method of construction and has not been substantially altered."

---

(3) that the resource "has not been substantially altered." (CMC, § 84.10.030.) It is easy to see how difficult it would be to attempt to make findings as to the second and third of these requirements that does not mirror the language of the ordinance. For example, how would one describe a finding that one has concluded that a resource has not been substantially altered, other than to state the resource "has not been substantially altered"? The City could attempt to find that the resource "has not been altered" or that the resource "has not been significantly altered," but such findings would be subject to criticism that they failed to meet the "substantially altered" standard of the relevant criterion. We envision that other attempts to deviate from the language of the ordinance in order to avoid mirroring the language of the ordinance would face similar scrutiny. It thus seems clear that an agency may simply make a finding that the resource "has not been substantially altered," and that such a finding is sufficient to inform the applicant about the analytical path adopted by the City in reaching its ultimate conclusion, despite the fact that this finding reflects the exact language of the ordinance.

Thus, the City determined not only that the property at issue possesses distinctive characteristics of an architectural style, but made a finding as to the specific architectural style that the dwelling connotes. Similarly, with respect to Criterion D, the Commission and City Council clearly identified the builder—the Hakes Investment Company—and explained the reason for finding that the dwelling was a notable work. Specifically, the Commission found that the subject dwelling was a strong example of the work that the builder had constructed in the City. These are factual findings that demonstrate how the Commission, and the City Council, applied the historic preservation ordinance to the subject property, thereby providing its analytical route for concluding that the subject property holds historic significance and should be so designated. Thus, contrary to appellants' contention, the City did more than simply "recite" the language of the CMC criteria in making its findings. The City provided its findings regarding this specific property, and why, in the City's estimation, the property met two of the five criteria for designating a resource as a historic resource.

We also reject appellants' contention that in its historic designation process, the City failed to apply the City's own "Historic Designation Criteria Guidelines" (Guidelines) in making the decision to designate the subject property as a historic resource. Appellants lodged with this court portions of the City's Guidelines, and argue on appeal that the City (1) failed to "analyze the historic context of the Property," (2) failed to analyze "the number of distinctive characteristics of an architectural style (Criterion C)," and (3) failed to consider "sufficient information about the body of work

22

related to a notable builder (Criterion D)."  The record does not support appellants' contentions.

The Guidelines state that they were "[a]dopted by the Coronado City Council on October 4, 2011."  The stated purpose of the Guidelines "is to assist in the understanding and application of Coronado's Historic Designation Criteria," and the document posits that the Guidelines "shall be used when evaluating a resource's eligibility as a Historic Resource."  Under a heading titled "Basics of Historic Resource Evaluation," the Guidelines explain that "[i]n order to be eligible for historic designation, a resource must be historically significant," and that "[w]hether or not a resource is good representative [of history] can only be judged and explained when it is evaluated within its historic context."  The Guidelines further state, "Once a historic context for the resource has been developed, the resource should be evaluated through the application of the historic designation criteria."

Appellants contend that because the City's resolution does not mention the Guidelines and does not expressly "discuss [the Guidelines'] application to the permit decision," the City failed "to apply its mandatory Guidelines to the Trust's permit decision."  We disagree.  There is no requirement that anyone involved in the historic designation process expressly state that the Guidelines are being applied, and the mere fact that the Guidelines were not referred to by name does not mean that they were not utilized throughout the process.  Further, the Guidelines do not alter the designation criteria enumerated in the CMC and considered by the City; rather, the Guidelines provide additional explanation of the meaning of the criteria, as well as examples of how

23

one might apply them. For example, with respect to Criterion C, the Guidelines explain that historical significance under this criterion must be established by considering whether a "resource" exhibits "enough distinctive characteristics to be truly representative of an architectural style," whether it is "valuable for the study of a particular aspect of the construction (type, period, or method of construction)," and whether it has not been "substantially altered from its historic condition." With respect to the "architectural style," the Guidelines explain that this should be determined "using scholarly work and architectural style guides." Similarly, with respect to Criterion D, the Guidelines explain that "[i]n order to be eligible for designation under Criterion D, a resource must first[ ] be identified with an architect, builder, designer, artisan, or landscape professional, and this identification should be supported with documentation." Thus, the Guidelines provide additional assistance to City staff, commissioners, and councilmembers in considering and assessing the historic value of particular City resources.

The administrative record in this case demonstrates that the City applied the Guidelines in processing appellants' demolition permit application, which required historic resource review. Despite appellants' contention, for example, that the City failed to "analyze the historic context of the Property," the staff report provides a list of the resources referenced by staff in researching the subject property. The list includes scholarly work, architectural style guides, City records, and ancestral resources.[8] In

_____

[8]    The "List of Sources" on which City staff relied in researching the subject property is as follows:

24

addition, the staff report demonstrates that City staff considered the elements of the

subject property, as well as the historical context of the time during which the subject

dwelling was designed and constructed.  Specifically, the staff report provides the

following historical context for the Spanish Bungalow style of architecture in the local

community:

> "Examination of the form, details, and finish of the dwelling indicate that the dwelling is representative of the trend toward construction of Period Revival architectural styles during the 1920s and 1930s,

> "Brandes, Ray. *Coronado: We Remember*; Coronado Historical Association; Coronado; 1993

> "Brandes, Ray and Carlin, Katherine Eitzen. *Coronado: The Enchanted Island*; Coronado Historical Association; Coronado; 1987

> "Carley, Rachel. *The Visual Dictionary of American Domestic Architecture*; Henry Holt and Company; New York; 1994

> "McAlester, Virginia and Lee. *A Field Guide to American Houses*; Alfred A Knopf, Inc; New York; 2004

> "Morgan, William. *The Abrams Guide to American House Styles*; Harry N. Abrams, Inc; New York; 2004

> "City of Coronado Permit Records
> "City of Coronado Newspaper Index
> "Sanborn Fire Insurance Maps 1949, 1988
> "Internet Resources

> "[¶] . . . [¶]

> "•  Ancestry.com *Department of Commerce-Bureau of the Census Population Schedules for years 1900 through 1940* [database on-line]. Provo, UT, USA: Ancestry.com Operations, Inc., 2011.
> "•  Ancestry.com. *US. City Directories* (Beta) [database on-line]. Provo, UT, USA: Ancestry.com Operations, Inc., 2011.
> "•  State of California, United States. *Great Register of Voters, 1900-1968*. Sacramento, California: California State Library."

25

specifically the Spanish Bungalow style. Period Revival styles took the details and architectural characteristics of high-style architectural trends and simplified them for smaller homes. One familiar example of this is the simplification and popularization of high-style Spanish Colonial architecture after the Panama-Californian Exposition in 1915, resulting in the large numbers of Spanish Bungalows that are seen throughout Coronado and the San Diego region."

It is clear that the staff report, which was utilized by both the Commission and the City Council in reaching the determination that the subject property should be designated a historic resource, considered the subject dwelling in its historic context. It is further clear that, despite not mentioning the Guidelines by name, the City staff report considered the historic significance of the subject property pursuant to the Guidelines.[9]

2. *The City's findings are supported by substantial evidence*

The next issue that appellants raise is whether the findings of the City Council are based on substantial evidence in light of the entire administrative record. (See *Bixby v. Pierno* (1971) 4 Cal.3d 130, 149, fn. 22.) In reviewing whether substantial evidence supports the City's historic resource designation decision, we do not reweigh the evidence. (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 849, fn. 11.) Rather, we "determine whether there is any evidence (or any reasonable inferences which can be deduced from the evidence), whether contradicted or uncontradicted, which, when viewed in the light most favorable to an administrative order or decision or a court's

---

[9] To the extent that appellants contend that the City failed to apply the Guidelines by failing to analyze "the number of distinctive characteristics of an architectural style (Criterion C)," and (3) failed to consider "sufficient information about the body of work related to a notable builder (Criterion D)" before ruling on their permit application, we address those concerns in parts III.B.2.a and III.B.2.b, *post*, respectively.

judgment, will support the administrative or judicial findings of fact. Administrative and judicial findings are presumed to be supported by the record; and orders, decisions and judgments are presumed to be correct." (*Ibid.*; see also *Citizens for Environmental Responsibility v. State ex rel. 14th Dist. Ag. Assn.* (2015) 242 Cal.App.4th 555, 575 (*Citizens for Environmental Responsibility*) [" 'reviewing courts, after resolving all evidentiary conflicts in the agency's favor and indulging in all legitimate and reasonable inferences to uphold the agency's finding, must affirm that finding if there is any substantial evidence, contradicted or uncontradicted, to support it' "].) It is for the agency to weigh the preponderance of conflicting evidence, and a reviewing court "may reverse its decision only if, based on the evidence before it, a reasonable person could not have reached the conclusion reached by it." (*Kirkorowicz, supra*, 83 Cal.App.4th at p. 986.)

An "appellant challenging [an agency's findings] has the burden to show that they are not" supported by substantial evidence. (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1062.)

           a. *Substantial evidence supports the Criterion C findings*

As noted, the Commission found that under Criterion C, the property "possesses distinctive characteristics of the Spanish Bungalow architectural style, and is valuable for the study of a type, period, or method of construction and has not been substantially altered." There is abundant evidence to support these findings.

The staff report, on which both the Commission and the City Council relied, provides sufficient evidence to support the City's finding that the subject dwelling possesses the distinctive characteristics of the Spanish Bungalow style, one of the Period

27

Revival architectural styles in use in the 1920s and 1930s. For example, the staff report notes that the dwelling "features many character defining features of the Spanish Bungalow style, *such as a flat roof and parapet, a stucco exterior finish, and simple square plan*." (Italics added.) In addition, the report notes that the dwelling includes a "street-facing," "large multi-light focal window," as well as a "stucco chimney . . . with a decorative detail." It also "features a recessed front entry with double multi-light French doors," and still possesses its "[o]riginal wood windows." The staff report constitutes sufficient evidence to support the City's finding in this regard.[10]

Further, there was no real dispute that the dwelling has not been significantly altered since its construction. Again, the staff report, which based its conclusion on the materials supplied by appellants as well as City records, concluded that "[t]he dwelling retains a high degree of architectural integrity, as it has not been visibly altered since its construction." In fact, appellants' application for a demolition permit indicates that the subject dwelling has not been substantially altered since it was built.

In addition, although appellants suggest otherwise, there is sufficient evidence to support the City's finding, adopted initially by the Commission and then by the City

_____

[10]     Although there was no real dispute during the administrative hearing process, or in the trial court, about the sufficiency of the evidence to support a finding that the subject dwelling possesses distinctive characteristics of the Spanish Bungalow architectural style, on appeal, appellants argue that the record is devoid of "any evidence, as required by the Guidelines, about . . . the number of distinctive characteristics of an architectural style (Criterion C)." As is clear from the staff report, however, there is evidence in the record that at least nine characteristics of the Spanish Bungalow style are apparent in the subject property. Thus, the City considered and analyzed a number of distinctive characteristics of the Spanish Bungalow style exhibited by the subject property, in accordance with the historic resource designation criteria and the Guidelines.

28

Council on appeal, that the subject property "is valuable for the study of a type, period, or method of construction." This finding is directly related to, and intertwined with, the other two findings regarding the fact that the property reflects the Spanish Bungalow architectural style, and that the property retains virtually all of the original distinctive characteristics of this architectural style because it has not been altered in any significant way since its construction in 1924. The staff report to the Commission described the period revival architectural styles of the 1920s and 1930s that included the Spanish Bungalow style. The architectural features of the dwelling were highlighted, and the Commission had photographs of the dwelling that permitted the commissioners to view the representative architectural features of the building. The City Council received the same information that the Commission reviewed concerning the type and period of the dwelling's construction. Accordingly, in upholding the Commission's decision, the City Council relied on evidence from the application, photographs, a staff member's presentation, and other evidence presented at the public hearing. This evidence supports the City's conclusion that the subject property is valuable for study because it reflects the Spanish Bungalow style, which places the resource within a particular historic trend— i.e., the Period Revival architectural style trend. The lack of exterior alterations adds to its potential value for study. The evidence is thus sufficient to support the conclusion that the subject property has value for the future study of this period of architecture.[11]

---

[11] The language of Criterion C does not require that the City, or any other party, actually be currently engaged in the study of the subject property. Nor does it envision, as appellants appear to contend, that a single study of the resource would necessarily

29

b. *Substantial evidence supports the Criterion D findings*

The Commission further found that under Criterion D, the subject dwelling "is representative of the notable work of the builder, the Hakes Investment Company because it is a strong example of the work they did throughout . . . Coronado." The City staff report, as well as the application materials submitted by appellants, which included the original building permit, provided evidence that the builder of the home was Hakes. In addition, the staff report identified all of the other dwellings constructed by Hakes in Coronado that the staff person could locate in the historical review. Attachments to the staff report included photographs of 21 homes built by Hakes in the City—three of which had been designated as historic resources, four of which had not been designated as historic resources, and fourteen of which had not been subject to historic designation review. An attachment also provided a list of six other Hakes-built homes that had been demolished prior to any of them having been subject to historic designation review. The staff report thereby provided evidence that Hakes had built at least 27 homes in the City, and provided evidence of Hakes's body of work in the City. Additionally, City staff presented a brief description of the builder published in the Coronado Strand Supplement in 1916. In considering and applying this evidence, the Commission and the City Council relied on at least three forms of evidence that the Guidelines identify as

---

render the resource without value for future study. Rather, Criterion C requires the reviewing body to determine whether the resource is of a type that *would be valuable for the study* of certain aspects of the community's history. In other words, the criterion provides for the possibility that in the future, scholars or citizens may find the resource valuable for understanding the historical context of the development and culture of the Coronado community.

"supporting documentation" with respect to the determination related to Criterion D—a brief biographical summary, a list of the builder's known works, and a copy of the original building permit identifying Hakes as the builder.[12]

The photographs of the other Hakes-built residences provided to the Commission, as well as to the City Council, enabled them to compare and contrast the subject property with other Hakes-built structures. The Commission, as well as the City Council, thus had information from which to make a finding that the subject property exemplified Hakes's work in the City, and to conclude that this particular property was "notable" due to the dwelling's remarkable architectural integrity (despite its age) and the fact that the dwelling represented the other dwellings that Hakes built in the City during the relevant time period.[13]

---

[12]     The City thus considered a breadth of "information about the body of work related to a . . . builder (Criterion D)" before ruling on appellants' permit application, as required by the Guidelines. Appellants suggest that the Guidelines require that the City analyze "sufficient information about the body of work related to a *notable builder*" when, in fact, neither the Guidelines nor the City's historic designation review criteria require that the professional related to the resource be notable. Rather, Criterion D specifies that the resource be "representative of the *notable work* of a builder [or other professional]." The Guidelines make this clear: "It is important to note that this criterion does not require that the professional be notable, or a master in their field; rather, the resource should represent the *notable work* of a builder, designer, architect, artisan, or landscape professional."

[13]     The City staff member who presented evidence to the Commission commented that "the property is unmodified from its original appearance, so that could make it a notable work as so many buildings of that age are now modified from their original appearance." Multiple commissioners adopted this assessment and viewed the property as typifying the work done by Hakes on Coronado in the early 20th century. For example, Commissioner Gillingham found that the subject property was an excellent example of the builder's work because most of the builder's work was small, and Commissioner Keith agreed. Commissioner Talbert noted that "[t]he Hakes were

31

In the City Council and trial court proceedings, as well as on appeal, appellants argue that because the Commission did not designate four other Hakes structures as historic resources, it should not have done so with respect to the subject property.[14] However, it is clear from the CMC standards that each property is assessed on its *own merits*. Although there may be similarities between the subject property and the other Hakes properties, including the four that were determined not to warrant historical resource designation, it was for the Commission, and the City Council in reviewing the Commission's determination, to weigh the evidence and determine whether historic

involved with a lot of different constructions in similar time frame, and [the subject property] looks quite consistent with a lot of things they were doing at the time."

[14] Appellants have not raised an equal protection claim regarding the treatment of their property vis-à-vis other Hakes-built properties that were not designated as historic resources. Rather, they are arguing that the City should have considered the evidence of similarities of the four nondesignated Hakes-built dwellings to the subject property and that in view of this evidence, the City should have declined to designate the subject property as a historic resource.

designation was appropriate for the subject property.[15]

Appellants also contend that the City Council was presented with evidence to contradict the Commission's findings on Criterion D, and that therefore, the City Council should have granted their appeal. Specifically, appellants refer to the public comment from a local architect and a brief report from one council member who apparently had spoken with a current owner of Hakes. The fact that this evidence was presented does not undermine the sufficiency of the evidence to support the City's ultimate decision. (See S*toddard v. Edelman* (1970) 4 Cal.App.3d 544, 551 [court will uphold an administrative decision if there is substantial evidence to support it, regardless of whether the evidence is contradicted or not.; see also *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1330 ["While City could have reached a different conclusion than it did based upon the evidence, that is not [the court's] concern"].) In addition, the City Council had the opportunity to weigh this evidence at

---

15      The record does not reveal the reasons why certain of the Hakes-built dwellings that received historic resource review were ultimately not designated as historic resources, whereas others were determined to be historical resources. One commissioner asked the City staff member, "Do you remember the discussion of what the difference was between those they picked to be historic and those they deemed to not be historic?" The City staff member responded that she had been able to glean only which homes had been designated and which homes had not, and stated that because the designations had occurred prior to her tenure as a City staff member, and because the "resolutions are not all that explicit in terms of why they were considered to be notable works," she could not provide further information about the differences. However, the mere fact that some Hakes-built dwellings were not determined to have historical significance does not, in and of itself, mean that there was insufficient evidence to support the conclusion that the subject dwelling *does* have historical significance.

the appeal hearing. This court's role is not to reweigh evidence, but rather, to determine whether the findings are supported by substantial evidence. The City Council had the same information that the Commission had in finding that the subject property was a notable work of the builder. Thus, the Council's decision to uphold the historic designation is supported by substantial evidence.

### c. *Appellants' additional contentions challenging the sufficiency of the evidence supporting the City's findings lack merit*

Appellants appear to suggest that the City failed to properly consider the evidence that appellants put forward in opposition to a finding that the property is a historical resource. For example, appellants contend that the material on which the City relied in support of its historic designation decision—i.e., the City staff report—did not "address or consider the evidence offered by the Trust at the City Council hearing from the builder and an architect." Appellants also appear to take issue with the fact that the City Council did not refer to the evidence regarding the builder during that portion of the hearing in which council members stated their positions on the record, as well as the fact that the City Council "noted only very briefly" the testimony of an architect who opined that the dwelling was not sufficiently notable to meet any of the criteria for historical designation. Neither contention serves to undermine the conclusion that there is sufficient evidence to support the City's findings.

As appellants acknowledge, the City staff report could not have addressed appellants' evidence, since that evidence was not presented until the City Council hearing

34

on appellants' appeal from the Commission's decision. The staff report contained evidence that the City's staff believed was significant to the determination to be made. Its relevance and utility is not undermined simply because it did not include or address information that appellants eventually presented to the City Council. Further, the City Council heard this evidence, and Resolution 8654 states that the City Council considered the oral testimony presented at the hearing. The absence of discussion of the evidence on the record does not mean that the City Council failed to consider the evidence. There is no requirement that individual City Council members specifically address such evidence in discussing their views of the matter. Nor is there any requirement that the City's resolution regarding the property specifically address this evidence. The City Council was free to weigh the evidence before it, and to decide that some evidence was more significant than other evidence. Again, it is the role of the administrative body to weigh conflicting evidence, not ours. (See *Friends of College of San Mateo Gardens v. San Mateo County Community College Dist*. (2016) 1 Cal.5th 937, 952–953 [a court's task "on review is . . . to decide whether an agency's determination is supported by substantial evidence . . . ' " 'not to weigh conflicting evidence and determine who has the better argument.' " ' "].) In sum, the record simply does not support appellants' contentions that the City failed to properly consider the evidence presented by appellants, and the existence of that evidence does not undermine the sufficiency of the evidence to support the City's determination regarding the historic significance of the subject property.

35

Appellants also contend that the City's reliance on the staff report materials in support of its decision is insufficient because the staff report "do[es] not determine or recommend that the property is a significant historic resource" under the relevant criteria. Appellants appear to suggest that because the staff report did not itself "make a determination" about the historic significance of the property, the staff report "do[es] not contain substantial evidence to support an ultimate decision to deny the Trust's [demolition] permit." There is no need for a staff report to "make a determination" regarding the ultimate conclusion to be decided by the City itself in order for that report to be relied on as evidence to support the City's conclusion. Indeed, the staff report presented evidence, and not conclusions, in order to allow the Commission, and, ultimately, the City Council, to make the final determination as to whether the subject property should be designated a historical resource. In doing so, the staff report clearly offered City staff opinions as to whether the subject property could be deemed to meet any or all of the relevant historic designation criteria outlined in the CMC. Staff concluded that the property did not meet Criteria A, B, or E. However, staff opined, after reciting relevant evidence, that the property "appears to be significant under Criterion C as an example of the Spanish Bungalow style" and "may be considered historically significant under Criterion D." The staff report regarding the subject property clearly contains substantial evidence to support the City's ultimate decision to designate the property as a historic resource.

## IV.

## DISPOSITION

The judgment of the trial court is affirmed.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.