Filed 2/16/22 Cruz v. Personnel App. Bd. of the City of El Centro CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ANTONIO CRUZ, | D078681 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU000996) |
| PERSONNEL APPEAL BOARD OF THE CITY OF EL CENTRO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge. Affirmed.

Sutherland & Gerber and Katherine Turner for Plaintiff and Appellant.

Cole Huber, Elizabeth L. Martyn and Ronald J. Scholar for Defendants and Respondents.

## I.

## INTRODUCTION

Antonio Cruz appeals from the trial court's denial of his petition for writ of administrative mandamus seeking to invalidate a decision of the defendant Personnel Appeal Board of the City of El Centro (Board). The

Board adopted a hearing officer's decision upholding the defendant City of El Centro's (City) termination of Cruz's employment as a police officer.

On appeal, Cruz contends that the Board's adopted decision is inadequate under the standards for administrative agency decisionmaking established by the California Supreme Court in *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 (*Topanga*). Cruz requests that we remand the matter to the trial court with directions to order the Board to provide "conclusive and clear findings" to ensure proper judicial review of the termination of his employment.

We affirm the trial court's ruling denying Cruz's petition.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The incident underlying the termination of Cruz's employment*

On an evening in February 2015, Officer Cruz responded to a residence to investigate a domestic dispute involving a possible battery. Additional officers also arrived at the residence, including Officer James Thompson.

During the officers' investigation at the scene, Officer Cruz became aware of evidence that the alleged perpetrator, J.J., had inflicted domestic violence upon the alleged victim, X.O. This evidence included a visible injury to X.O.'s lip, which Officer Cruz observed. Officer Thompson also noticed that X.O. appeared to have been crying, her shirt was torn, and the skin on her neck was red, as if someone had grabbed her by the neck. While at the scene, Officer Cruz concurred with Officer Thompson's assessment that the incident had involved domestic violence. Officer Thompson thought that it was obvious that some type of physical incident had occurred. He informed Officer Cruz that Officer Cruz should "do the DV," before leaving the scene.

2

Officer Cruz, however, failed to arrest J.J. for a domestic violence related offense, photograph X.O.'s injury, or provide X.O. with literature pertaining to domestic violence, all in violation of City Police Department (Department) policies.

B. *The internal affairs investigation*

Officer Thompson later learned that Officer Cruz had documented the February 2015 incident as a verbal argument. Officer Thompson reported his observations of the incident to his supervisor, and an internal investigation ensued.

Sergeant Aaron Messick conducted the investigation. During his investigation, Sergeant Messick interviewed Officer Cruz on two occasions. During the first interview, while discussing the February 2015 incident, the following colloquy occurred:

"Messick: Did [X.O.] appear as if she was crying?

"Cruz: I don't recall.

"Messick: Was [X.O.'s] shirt ripped . . . ?

"Cruz. Not that I remember.

"Messick: Was her shirt wet?

"Cruz: I don't remember.

"Messick: Did [X.O.'s] lip have a cut?

"Cruz: Yes.

"[Cruz's] Attorney: Can you be more [specific] and bear in mind we've just viewed the video[?[1]]

---

[1]    It appears that Cruz's attorney was referring to video taken from Cruz's body worn camera.

3

"Messick: [O]kay[.]

"[Cruz's] Attorney: [C]an you be more specific of what specifically you observed at the night [*sic*] and also on the video[?]

"Cruz: [O]kay that night I didn't notice anything on her lip any type of cut or anything.

"Unknown: [O]kay[.]

"[Cruz's] Attorney: [A]nd then on further review of the video what did you observe[?]

"Cruz: I noticed something that appeared to be a cut or a blister on her lip after reviewing the video[.]

"Messick: Today?

"Cruz: Today.

"Messick: Okay.

"Cruz: Prior to this meeting.

"Messick: Okay so like a cut or a blister?

"Cruz: Um hum something to that [e]ffect.

"[Cruz's] Attorney: Might . . . it been a burn?

"Cruz: Yes.

"Messick: Some type of injury?

"Cruz: Correct.

"Messick: On her lip okay, um but that night you didn't notice?

4

"Cruz: That night I did not."

During the second interview, Sergeant Messick showed Officer Cruz a portion of video footage from the February 2015 incident during which Officer Cruz asked X.O. whether she had a cut on her lip and whether she wanted Officer Cruz to pursue the domestic violence issue.[2] Officer Cruz stated that he did not remember noticing the cut prior to watching the video footage.

In a memorandum summarizing his investigation, Sergeant Messick stated that Officer Cruz had falsely stated that he had not observed a cut on X.O.'s lip on the night of the incident, despite video evidence demonstrating that Officer Cruz had seen the cut at that time. With respect to Officer Cruz's statements concerning the incident during the investigation, Sergeant Messick concluded in part:

> "Officer Cruz provided misleading statements as to the events that occurred during the call in question. It should be noted Officer Cruz did in fact notice [X.O.'s] injury to her lip on the night of the incident because he pointed out the injury to [X.O.] by asking her to look at the cut on her lip and then he asked her if she wanted him to press the [domestic violence] issue as well. In addition to those questions, Officer Cruz acknowledged he heard Officer Thompson ask [X.O.] about an injury to her lip that night. . . . It should be noted that [Officer Cruz] recalled other details about the incident, such as the nature of the argument between [J.J.] and [X.O.], and Officer Thompson

---

[2] During his second interview with Sergeant Messick, Officer Cruz acknowledged that, prior to his first interview with Messick, he had been allowed to view the video from the February 2015 incident taken from his body camera. However, Officer Cruz stated in his second interview that, prior to his first interview, he had not reviewed the portion of the video from the incident during which he asked X.O. about her lip. Officer Cruz explained that he had not viewed this portion of the video "because I thought we had covered all the main points that were gonna [sic] be questioned through this investigation."

5

asking [X.O.] about the cut on her lip, yet [Cruz stated that he did not remember seeing] the obvious cut to [X.O.'s] lip which both Officer Thompson and he pointed out. Nor did he remember seeing [X.O.'s] ripped and wet shirt pointed out by Officer Thompson and visible on the body worn camera footage, or the redness on [X.O.'s] neck Officer Thompson saw."

Sergeant Messick also stated the following concerning his investigation:

> "Video[3] and Officer Thompson's firsthand observations showed there were signs of [J.J.] being the aggressor. Video showed that [X.O.] had a cut to her lip, which both officers saw and acknowledged at one point in their video. [X.O.] also had a ripped and wet shirt. It was shown that [X.O.] was either in denial or covering up for [J.J.] so he would not be arrested.

> "During the course of the investigation, it was determined Officer Cruz was handling a call where some type of domestic violence occurred. The video recorded from the officers['] body worn cameras showed that victim [X.O.] had a torn shirt, it was wet, and that she had an injury to her lip. Both [J.J.] and [X.O.] admitted to having some type of domestic dispute."

C. *The City's termination of Cruz's employment*

In January 2016, the City's Chief of Police terminated Cruz's employment. In his termination letter, the Chief stated that Cruz had violated the following Department polices:

> "§ 340.3.5 (q) Failure to take reasonable action while on-duty and when required by law, statute, resolution or approved [D]epartment practices and procedures.

---

3    Sergeant Messick stated that he had reviewed footage from Officer Thompson's and Officer Cruz's body worn cameras.

"§ 340.3.5 (ad) Giving false or misleading statements, or misrepresenting or omitting material information to a supervisor, or other person in a position of authority, in connection with any investigation or in the reporting of any [D]epartment-related business."

D. *The administrative proceedings and Cruz's initial petition for writ of administrative mandamus*

In September and December of 2016, a hearing officer held an evidentiary hearing on Cruz's appeal of the termination of his employment.

In March 2017, the hearing officer rendered a summary decision[4] in favor of the City upholding the City's termination of Cruz's employment.

Later that same month, the Board reviewed the decision and remanded the matter to the hearing officer "for the purpose of allowing submittal of a supplemental decision in which the [h]earing [o]fficer makes findings of fact."

On March 29, 2017, the hearing officer issued a supplemental decision upholding Cruz's termination. In his decision, the hearing officer found in relevant part:

> "It was apparent throughout the testimony and collaborative evidence presented by the City . . . that Officer Antonio Cruz did not adhere to established protocols of [d]omestic [v]iolence as mandated with [Department] Policy [section] 320[5] and when questioned, he did not recall and/or denied that [d]omestic [v]iolence had occurred at the residence, thereby providing false or misleading

---

[4]     The two-paragraph decision did not contain any findings of fact.

[5]     The hearing officer quoted several of the provisions of this policy, including those mandating the taking of witness statements, taking photographs of the alleged victim's injuries, providing the alleged victim with a domestic violence informational handout, and taking "appropriate enforcement action."

7

statements as outlined within [Department] Policy [section] 340.3.5."[6]

The hearing officer also found that Officer Cruz failed to pursue "an arrest related to the domestic violence issue," despite the fact that Officer Thompson stated that domestic violence was suspected and the alleged victim had suffered an apparent injury. In addition, the hearing officer found that Cruz had failed to photograph the alleged victim's injury or provide her with domestic violence literature, as required by Department policy.

The hearing officer concluded:

> "[B]ased upon the evidence, video footage, testimony by Officer Antonio Cruz, Sergeant Messick and Police Chief Eddie Madueno I find that the [City] has substantially supported just cause for termination, as outlined within [Department] [section] 340 – Disciplinary Policy."

In May 2017, the Board issued an opinion reviewing the hearing officer's findings and upholding the hearing officer's decision.

Cruz filed a petition for writ of administrative mandamus seeking review of the Board's decision.[7] In November 2018, the trial court entered a judgment vacating the Board's decision and remanding the matter to the Board. In its judgment, the trial court stated: "[The Board is] commanded

---

[6]     As noted in part II.C, *ante*, Department policy section 340.3.5 (q) provides in relevant part: "Failure to take reasonable action while on-duty and when required by law, statute, resolution or approved department practices and procedures."

     In addition, as also noted in part II.C, *ante*, Department Policy section 340.3.5 (ad) provides in relevant part: "Giving false or misleading statements, or misrepresenting or omitting material information to a supervisor, or other person in a position of authority, in connection with any investigation or in the reporting of any department-related business."

[7]     This petition for writ of administrative mandamus is not in the record.

and directed that the new decision will not make, add or create new evidence or factual findings beyond those set forth in the March 29, 2017 decision of the hearing officer."

In May 2019, the Board issued a summary decision adopting the hearing officer's March 29, 2017 decision and upholding the City's termination of Cruz's employment.

E. *Cruz's July 2019 petition for writ of administrative mandamus*

    1. *Cruz's petition and supporting memorandum of points and authorities*

In July 2019, Cruz filed a petition for writ of administrative mandamus against the City and the Board seeking a judgment vacating the Board's May 2019 decision upholding the City's termination of his employment.

In his accompanying memorandum of points and authorities, Cruz argued, "The Board abused its discretion by issuing a decision upholding Cruz's termination when the findings and evidence, in light of the whole record, do not support this dishonestly [*sic*] or this level of discipline." Cruz supported this argument by contending that he had made "an honest misstatement," during the internal affairs investigation. Cruz further argued that there was "no finding that [he] intended to lie," and "no evidence of intent to deceive by [Cruz]." (Boldface & capitalization omitted.) In support of these contentions, Cruz pointed to testimony of Sergeant Messick during the administrative hearing in which Messick stated that he could not point to any evidence of Cruz's intent to deceive during any portion of the internal affairs investigation. Cruz argued further that the record demonstrated that, at most, he had made an honest and understandable mistake about a matter for which he had no motive to lie. In addition, Cruz noted that he had acknowledged his error during his second internal affairs interview.

9

2. *The Defendants' joint opposition*

The City and the Board filed a joint opposition in which they argued that Cruz's intent to deceive could be inferred from the circumstantial evidence. Defendants argued in relevant part:

> "Here the [a]dministrative [r]ecord unambiguously reflects that [Cruz] provided misleading and dishonest statements during the Department's investigation. In [Cruz's] first interview he expressly denied noticing the cut on [X.O.'s] lip on the night of the call. [Citation.] This statement is contradicted by the statement of Officer Thompson [citation] and [Cruz's] own body worn camera recording where he is heard saying to [X.O.] that she has a cut on her lip and does she want him to press the [domestic violence] issue. [Citation.] In short, [Cruz] told [Sergeant] Messick one thing and then after being confronted with the truth in the recording, told him another. The fact finders in this matter have all heard [Cruz's] excuses and explanations first hand and they rejected them."

The Defendants further argued that Cruz had failed to adequately investigate the February 2015 incident as one involving potential domestic violence, in violation of several Department policies. The Defendants noted that Cruz failed to take photographs of the victim's injuries, failed to contact the reporting party, failed to provide the victim with domestic violence literature and failed to make an arrest for a domestic violence crime.

Finally, the Defendants argued that termination was the appropriate discipline given that Cruz "was dishonest and misled his superiors with regard to what he observed on the domestic violence call for service."

3. *Cruz's reply*

In his reply, Cruz argued that the opposition "incorrectly outlines the issues in the case." Cruz argued:

> "The [h]earing [o]fficer['s] findings state that Cruz 'did not recall <u>and/or</u> denied that Domestic Violence had occurred at

10

the residence, thereby providing false <u>or</u> misleading statements . . .' and '[Cruz] responded with either false <u>or</u> misleading statements.' These conclusions are not a finding of dishonesty. These conclusions are an 'and/or' decision based upon the investigator's conclusion that there was no finding of an intent to lie."

Cruz also argued that, "The findings at issue do not address and do not conclude that there was a lie." Cruz further maintained there was evidence in the record to support a finding that he harbored *no* intent to deceive, specifically Sergeant Messick's testimony at the administrative hearing that Messick could not point to any evidence from the investigation of Cruz's intent to deceive.

F. *The trial court's December 14, 2020 decision denying Cruz's July 2019 petition for writ of administrative mandamus*

The trial court held a hearing on Cruz's July 2019 petition in August 2020 and ordered the parties to each provide a proposed statement of decision.[8] Thereafter, the parties each filed a proposed statement of decision.

On December 14, 2020, the court entered a decision denying Cruz's petition in its entirety.[9] The trial court described the issue presented by Cruz's petition as follows:

> "The [p]etition frames the issue as a question of whether termination is appropriate with a record that there was no intentional misrepresentation or lie. [Cruz] asserts that he made a mistake of fact, that the City did not find that

---

[8] The record does not contain a reporter's transcript of the hearing.

[9] While the trial court's December 14, 2020 decision states that it is a "tentative" decision, it appears that the trial court intended for the December 14, 2020 decision to be its final decision, and the parties have treated it as such. Accordingly, we deem the trial court's December 14, 2020 decision to be a final decision.

11

[Cruz] lied, and that termination for a mistake is not an appropriate level of discipline. [Cruz] asserts that the adopted [d]ecision of the [h]earing [o]fficer includes written findings that conclude that [Cruz] 'did not recall and/or denied that [d]omestic [v]iolence has occurred at the residence, thereby providing false or misleading statements . . .' and that 'he responded with false or misleading statements.'"

After reviewing the parties' contentions, the trial court concluded that Cruz violated the Department's policies pertaining to domestic violence incidents, ruling in relevant part:

"Department [p]olicy requires officers handling domestic violence calls to take photographs of any injuries, . . . provide the victim with the Department's handout materials on domestic violence and make arrests for violation of domestic violence laws, but it is undisputed that [Cruz] took none of these required actions."

The trial court stated, "While this violation alone warrants progressive discipline, in the context of the larger incident, it contributes to the finding by the Board that termination was appropriate."

With respect to the "larger incident," the trial court found that Cruz had violated a Department policy precluding personnel from providing false or misleading statements in connection with an investigation. After describing Cruz's two interviews with Sergeant Messick, the trial court reasoned in part:

"[Cruz] asserts that he simply did not recall that domestic violence had occurred at the residence, and further that there is no evidence that the false/misleading statements he gave at his interview were intentionally false. However, [Cruz] gave affirmative answers to questions that were demonstrably false, such as his assertion that he did not notice a cut on [X.O.'s] lip on the night of the incident. It is clear that [Cruz] did in fact notice the cut on that night,

12

and if he did not remember, then his answer should have reflected that he could not recall rather than affirmatively stating that he did not notice.  It is clear that [Cruz's] statements in the first interview were false.  [Cruz] specifically stated 'okay that night I didn't notice anything on her lip any type of cut or anything.'  [Citation.]  [Cruz's] testimony indicates that reviewing the video just prior to the interview was when he first noticed the lip injury and again states, 'That night I did not' in response to a question as to whether he noticed the injury at the scene.  [Cruz] maintained throughout the first interview that he did not see any evidence of battery on the scene that night.  [Cruz] does admit that he heard Officer Thompson speak to [X.O.] about the injury on her lip at the house.  At the second interview, he reviewed the entire video and saw himself mention the lip injury to [X.O.] but maintains that he does not remember noticing.  [Cruz] asserts that he thought it could have been a burn or a blister or had some other source than a physical altercation.  While [Cruz] asserts that Messick's testimony indicates that he did not consider intent, Messick's testimony does indicate that he did not find [Cruz] credible based on his ability to detail particular facts about the call but completely omits the lip injury from his recounting.  [Citation]."

The trial court further concluded that the "record supports the findings that [Cruz] was dishonest. . . ."  The court reasoned in part:

"It is not credible that [Cruz] remembers hearing Officer Thompson mention the lip injury to [X.O.], but that he specifically did not notice the cut himself.  [Cruz's] assertion throughout the first interview was not that he did not recall whether he saw the cut, but specifically that he did not notice the injury on the night of the incident.  [Cruz's] credibility is crucial to proper performance of his duties . . . and the investigation showed his credibility to be lacking."

13

The trial court ultimately concluded that there was "ample evidence of dishonesty and failure to properly investigate the domestic violence call," and denied Cruz's petition in its entirety.

G. *The appeal*

On February 5, 2021, Cruz filed an appeal from the trial court's decision denying his petition for writ of administrative mandamus. Although Cruz stated in his February 5, 2021 notice of appeal that the trial court's decision was entered on December *5, 2021*, he attached the trial court's December *14, 2020* decision denying his petition for writ of administrative mandamus.

On February 17, 2021, Cruz filed an amended notice of appeal stating that he was appealing from the trial court's December 14, 2020 decision denying his petition for writ of administrative mandamus, again attaching the December 14, 2020 decision denying his petition for writ of administrative mandamus.[10]

_____

[10] The December 14, 2020 decision denied Cruz's petition for writ of administrative mandamus in its entirety and thus constituted a final appealable judgment. (See *City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 192 [a ruling denying a petition for writ of mandamus is " 'properly treated as a final judgment' " when it " 'contemplate[s] no further action, such as the preparation of another order or judgment [citation], and dispose[s] of all issues between all parties' "].) In addition, we construe Cruz's February 5, 2021 notice of appeal to have been taken from the December 14, 2020 decision because it is clear that Cruz intended to appeal from this decision, notwithstanding the typographical error in Cruz's February 5, 2021 notice of appeal pertaining to the date on which the trial court's decision was entered. (See Cal. Rules of Court, rule 8.104(a)(2); *Luz v. Lopes* (1960) 55 Cal.2d 54, 59 ["notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced"].) Finally, because Cruz's February 5, 2021 notice of appeal was filed less than 60 days after the trial court entered the December 14, 2020 decision, Cruz's

14

III.

DISCUSSION

*The Board's decision complies with* Topanga

Cruz contends that the Board's adopted decision[11] fails to provide "[l]egally [a]dequate [f]indings," and contains "[i]nadequate . . . [a]nalysis," in violation of *Topanga, supra*, 11 Cal.3d 506.

The legal sufficiency of the Board's adopted decision presents a question of law. Thus, we review Cruz's contention de novo. (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487 [insofar as an appeal from an administrative mandamus proceeding presents questions of law, our review is de novo].)[12]

---

appeal is timely (see Cal. Rules of Court, rule 8.104) and we have appellate jurisdiction over this matter. (See *City of Calexico, supra*, at p. 189 [" 'Compliance with the time for filing a notice of appeal is mandatory and jurisdictional' "].)

[11] By "Board's adopted decision," we refer to the hearing officer's March 29, 2017 decision as adopted by the Board in May 2019.

[12] Defendants contend that Cruz failed to adequately preserve his *Topanga* claim in the trial court. While Cruz alleged in his writ petition that the Board's adopted decision violated *Topanga*, he did not clearly present the argument that he makes on appeal in his opening brief in the trial court. However, notwithstanding any possible forfeiture, we exercise our discretion to consider Cruz's argument that the Board's adopted decision violates *Topanga* because the argument presents a pure question of law. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657 ["Appellate courts . . . have the 'discretion to address questions not raised in the trial court when the theory presented for the first time on appeal involves only a legal question determinable from facts that are (1) uncontroverted in the record and (2) could not have been altered by the presentation of additional evidence' "].)

A. Topanga *and its progeny*

In *Topanga,* our Supreme Court held that in administrative proceedings for which judicial review is available pursuant to administrative mandamus proceedings under Code of Civil Procedure, section 1094.5,[13] "the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga, supra*, 11 Cal.3d at p. 515.) The *Topanga* court reasoned that the requirement that the agency provide such findings serves several purposes, including: "facilitat[ing] orderly analysis" by the agency; enabling a "reviewing court to trace and examine the agency's mode of analysis"; enabling the parties to determine whether and on what basis to seek judicial review; and "serv[ing] a public relations function by helping to persuade the parties that administrative decision-making is careful, reasoned, and equitable." (*Id.* at pp. 516–517.) Although an agency's findings " 'need not be stated with the formality required in judicial proceedings' [citation], they nevertheless must expose the [agency's] mode of analysis to an extent sufficient to serve the[se] purposes . . . ." (*Id.* at p. 517, fn. 16.)

In applying *Topanga*, courts have stated that "[a]dministrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954 (*Southern Pacific Transportation Co.*).) Further, pursuant to *Topanga*, "An agency's findings under Code of Civil Procedure section 1094.5 'do not need to be extensive or detailed.' [Citation.] 'In addition, findings are to be liberally construed to support rather than defeat the decision under

---

13    It is undisputed that the administrative proceedings in this case are subject to judicial review pursuant to Code of Civil Procedure section 1094.5.

16

review.' [Citation.]" (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 421 (*Young*), italics omitted.) In *Alpha Nu Assn. of Theta XI v. University of Southern California* (2021) 62 Cal.App.5th 383 (*Alpha Nu. Assn. of Theta XI*), the Court of Appeal explained the application of the doctrine of liberal construction in this context:

> " ' " '[W]here reference to the administrative record informs the parties and reviewing courts of the theory upon which an agency has arrived at its ultimate finding and decision it has long been recognized that the decision should be upheld if the agency "in truth found those facts which as a matter of law are essential to sustain its . . . [decision]." ' " ' (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 516; see also *Kifle-Thompson v. State Bd. of Chiropractic Examiners* (2012) 208 Cal.App.4th 518, 521 & fn. 2, 530– 531 [State Board of Chiropractic Examiners complied with *Topanga* in revoking chiropractor's license as sanction for engaging in six separately defined varieties of 'unprofessional conduct,' where Board found chiropractor had conspired in formation of sham medical corporations and participated in insurance fraud; it 'require[d] no great analytic leap' for Court of Appeal to conclude from these findings that chiropractor had committed all six varieties of unprofessional conduct].)" (*Id.* at pp. 413–414.)

B. *Application*

Cruz contends that the Board's adopted decision violates *Topanga* for two reasons. First, Cruz notes that the Board found that he "did not recall and/or denied that [d]omestic [v]iolence had occurred at the residence, thereby providing false or misleading statements as outlined within [Department] Policy [section] 340.3.5." Cruz contends that the " 'and/or' conclusion is legally inadequate." While Cruz contends that "[i]t is an error of law to accept . . . two separate, alternate findings," he points to no case law holding that alternative findings are improper, and we are aware of none. On

17

the contrary, as discussed above, we must afford an administrative agency "considerable latitude," with regard to the "precision, formality, and matters reasonably implied" from the agency's findings. (*Southern Pacific Transportation Co., supra*, 191 Cal.App.3d at p. 954.) Further, the Board's key finding that "bridge[s] the analytic gap between the raw evidence and ultimate decision or order" (*Topanga, supra*, 11 Cal.3d at p. 515) is that Cruz made "false or misleading statements"; that is the act that is prohibited in Department Policy section 340.3.5. (See Department Policy, § 340.3.5 (ad) [prohibiting "[g]iving false or misleading statements, or misrepresenting or omitting material information to a supervisor, or other person in a position of authority"].) Cruz fails to demonstrate the legal significance of whether he made such false or misleading statements by stating that he did not recall whether domestic violence had occurred and/or by denying that domestic violence had occurred.[14] Accordingly, we reject Cruz's contention that the Board committed "an error of law," by adopting a decision with "two separate, alternative findings."

Second, Cruz contends that "inadequate evidence and analysis," supports the Board's finding that Cruz "did not recall that domestic violence had occurred at the residence." (Boldface & capitalization omitted.) Cruz presents two distinct arguments in support of this contention. First, he argues that the Board's decision did not refer to sufficient "evidence" or provide adequate "detail" in support of this finding. However, *Topanga* does not require that an agency recite *evidence* or *detail* in support of its decision,

---

14　As discussed in the text, *post*, the Board impliedly found that Cruz had *falsely* stated that he did not recall that domestic violence had occurred, and there is nothing in the Board's adopted decision suggesting that it determined that a *truthful* failure to recall would support termination of employment.

18

it requires an agency to "set forth *findings* . . . ." (*Topanga, supra*, 11 Cal.3d at p. 515, italics added.) The Board's adopted decision states, "It was apparent throughout testimony and collaborative evidence presented by the City . . . that Officer Antonio Cruz did not adhere to established protocols of [d]omestic [v]iolence as mandated with [Department] Policy [section] 320 and when questioned, he did not recall and/or denied that [d]omestic [v]iolence had occurred at the residence, thereby providing false or misleading statements as outlined within [Department] Policy [section] 340.35." This constitutes a sufficient *finding* under *Topanga*. To the extent that there is any ambiguity in the finding, we are required to construe the finding in favor of upholding the agency's decision. (See, e.g., *Young, supra*, 10 Cal.App.5th at p. 421; *Alpha Nu Assn. of Theta XI., supra*, 62 Cal.App.5th at pp. 413–414 [stating that the doctrine of liberal construction applies to judicial review of the adequacy of administrative agency's findings].) Further, while Cruz challenges the legal sufficiency of the Board's adopted *decision*, he does not contend that there is insufficient evidence in the *record* to support the Board's findings.[15] Thus, we need not outline all of the evidence that supports such findings in this opinion.[16]

---

[15] The *Topanga* court made clear that a party challenging an administrative agency decision may ask that a reviewing court "scrutinize the *record* and determine whether substantial evidence supports the administrative agency's findings." (*Topanga, supra*, 11 Cal.3d at p. 514, italics added.) However, as noted in the text, Cruz makes no such argument on appeal. His only contention is that the Board's *decision* is insufficient under *Topanga*. We reject that argument for the reasons stated in the text.

[16] In any event, the evidence pertaining to the underlying incident summarized in part II.A, *ante*, and the evidence pertaining to the internal affairs investigation summarized in part II.B, *ante*, supports the Board's finding that Cruz made false or misleading statements to a superior.

19

Cruz also argues that a finding that he did not *recall* whether domestic violence had occurred would suggest that the "matter was one of a mistake [rather than] intentional dishonest[ ]y."[17]  We are not persuaded.  A false denial of one's ability to recall an event *does* support a finding of intentional dishonesty.  (Cf. *People v. Johnson* (1992) 3 Cal.4th 1183, 1219 [noting that "a witness's claim of lack of memory [may] amount[ ] to deliberate evasion," and discussing the law that applies when a "witness's 'I don't remember' statements are evasive and untruthful"].)  Because, as Cruz states in his brief, one of the Board's alternative findings was that "[Cruz] 'did not recall that [d]omestic [v]iolence had occurred at the residence, thereby providing false or misleading statements as outlined in [Department] Policy [section] 340.3.5,' " the Board impliedly found that Cruz had been *dishonest* in stating that he did not recall whether domestic violence had occurred.  Thus, we reject Cruz's contention that the Board's alternative finding as to his lack of recall did not support a finding that Cruz made a false or misleading statement.

---

[17]    Cruz argues:  "[T]he statement that [Cruz] 'did not recall' does not support the conclusion that [Cruz] provided false statements or that [Cruz] provided misleading statements."  He also contends:

> "Failure to recall is different than providing false or misleading statements.  Actively providing false statements and providing misleading statements is not the equivalent of forgetting something."

IV.

DISPOSITION

The December 14, 2020 judgment denying the petition for writ of administrative mandamus is affirmed.

Cruz is to bear costs on appeal.


AARON, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.