Filed 5/3/22  Pacificare Life & Health Ins. Co. v. Lara CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| PACIFICARE LIFE AND HEALTH INSURANCE COMPANY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>RICARDO LARA, as Insurance Commissioner, etc.,<br><br>    Defendant and Appellant. | G056160<br><br>(Super. Ct. No. 30-2014-00733375)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Reversed and remanded.  Plaintiff and Appellant's request for judicial notice denied.

Gibson, Dunn & Crutcher, Daniel M. Kolkey, Theodore J. Boutrous, Jr., Joseph A. Gorman, Deena B. Klaber, Elizabeth A. Dooley, Kahn A. Scolnick, and Michael J. Holecek for Plaintiff and Appellant.

Xavier Becerra and Ron Bonta, Attorneys General, Tamar Pachter, Assistant Attorney General, Lisa W. Chao and Laura E. Robbins, Deputy Attorneys General; Strumwasser & Woocher, Michael J. Strumwasser, Bryce A. Gee, and Caroline Chiapetti for Defendant and Appellant.

California Appellate Law Group, Ben Feuer and Julia Partridge for the Chamber of Commerce of the United States of America and the California Chamber of Commerce as Amici Curiae on behalf of Plaintiff and Appellant.

Greenberg Traurig and William Gausewitz for the American Council of Life Insurers, the American Property Casualty Insurance Association, the Association of California Life and Health Insurance Companies and the Personal Insurance Federation of California as Amici Curiae on behalf of Plaintiff and Appellant.

\*          \*          \*

This is a complicated case with a voluminous record. To borrow a phrase used by one counsel during oral argument, it is "a beast."

It began when PacifiCare Life and Health Insurance Company (PacifiCare) petitioned for a writ of mandate, seeking to reverse a penalty of nearly $175 million assessed against it by the Insurance Commissioner of the State of California (the Commissioner). The penalty was not a single assessment; rather it was the sum of penalties assessed for 19 distinct categories of wrongdoing, each involving anywhere from 2 to 462,805 violations.[1] The total number of alleged violations exceeds 900,000. The Decision was 220 pages long; the trial court's statement of decision, which is a primary focus of this appeal and is incorporated by reference into its judgment granting the writ of mandate, is 43 pages long. The administrative record exceeds 50,000 pages.

---

[1] The Commissioner's decision (the Decision) identifies 20 categories of violations. However, one category—misrepresenting facts to the California Department of Insurance—was not separately penalized. Instead, it was considered an aggravating factor in assessing other penalties.

Because PacifiCare's challenge to the penalty categories included arguments that three regulations relied upon by the Commissioner throughout the Decision were facially invalid, the court and parties agreed to bifurcate the case to first address those issues in a "phase 1" proceeding.

After the trial court ruled that all three regulations were facially invalid, the court and the parties cooperated to create appellate jurisdiction for what was effectively an interim appeal of that ruling. While that appeal was pending, both the trial court and this court declined to stay further proceedings.

Phase 2—the writ of mandate trial—therefore moved forward with the court and both parties apparently assuming the three challenged regulations were in fact invalid due to the trial court's ruling in phase 1.  At the conclusion of phase 2, the trial court granted the writ of mandate, reversing all 19 categories of penalties.  The reversal of each category was based, at least in part, on the trial court's phase 1 ruling which had invalidated the regulations.

After the trial court's entry of the judgment in the phase 2 trial, we issued our decision in the first appeal, *PacifiCare Life & Health Ins. Co. v. Jones* (2018) 27 Cal.App.5th 391 (*PacifiCare I*).  The *PacifiCare I* opinion reversed the trial court's ruling that the three regulations were invalid.  The trial court agreed with counsel that it was precluded from reassessing its writ of mandate ruling in the wake of our decision due to the pendency of the parties' phase 2 appeals.

We now reverse the phase 2 judgment and remand the case to the trial court for purposes of such a reassessment.

During oral argument, after expressing our concerns about the viability of the phase 2 judgment since it was issued before the trial court had the benefit of our *PacifiCare I* ruling, we asked counsel for both sides if any part of the phase 2 trial result could be salvaged.  After considering both parties' responses along with their briefing, we conclude the answer to that question is no.

3

Although both parties argue their current appeals are not moot as a consequence of *PacifiCare I*, and that they raise disputed issues of independent significance, we decline to engage in a piecemeal analysis of complex issues that are intertwined both factually and analytically. The folly of doing so is demonstrated by PacifiCare's briefing in this case. Although we stayed briefing in this appeal until after *PacifiCare I* became final, PacifiCare's opening brief failed to address the impact of that opinion on the phase 2 judgment. Instead, PacifiCare tackled that critical issue for the first time in its response to the Commissioner's cross-appeal. PacifiCare then urged us to reconsider and reverse *PacifiCare I* because "'with the benefit of a clarified record,'" we should now recognize how unfairly the regulations were applied in this case.

We decline to revisit our decision in *PacifiCare I*. But the argument also makes clear that, in a case as complicated as this one, there is a danger in analyzing and deciding issues in isolation. Moreover, PacifiCare's assertion that the Commissioner unfairly applied the regulations in this case is not the only new, factually-based argument proffered for the first time in this appeal. The parties disagree, for example, on whether PacifiCare has waived any arguments it failed to make below. That is an issue that should be addressed by the trial court in the first instance.

Consequently, while both parties urge us to decide a number of disputed issues before we remand the case back to the trial court, we decline to do so. Ultimately, such an approach to this case would promote neither judicial economy nor analytical clarity. Indeed, that approach has caused many of the current problems.

We consequently reverse the judgment and remand the case to the trial court with instructions to reconsider its writ of mandate decision in light of *PacifiCare I;* to determine which, if any, additional or alternative arguments should be addressed in the first instance; and to address those arguments and make other changes as necessary in

order to render a new decision either granting or denying a writ of mandate, in whole or in part.[2]

## FACTS

PacifiCare merged with UnitedHealth in 2005.  Prior to that time, PacifiCare served primarily health maintenance organizations and seemingly had a reputation for excellent customer service.  Although PacifiCare also served 120,000 preferred provider organizations (PPOs), that was a relatively small segment of its business.

The PacifiCare/UnitedHealth merger was approved by the then-Insurance Commissioner, John Garamendi, who at the time expressed concerns about UnitedHealth's "claims-handling history and PacifiCare's postmerger customer service presence in California."  The Commissioner's approval was subject to specific conditions, memorialized in a document that required PacifiCare to adhere to certain performance standards.

According to the Decision, UnitedHealth pushed for cost savings following the merger, and PacifiCare soon laid off 600 employees, shut down a large portion of its California operation, and essentially outsourced much of its claims-handling processes to UnitedHealth or third-party vendors.  By April 2007, PacifiCare had reduced its workforce by 39%, eliminating 4,239 employees, including 2,202 California based positions.  By June 2007—18 months after the merger—UnitedHealth reported it had surpassed its three-year cost cutting goal of $350 million, having achieved $950 million in aggregate savings.  It attributed $365 million to "'efficiencies'" or "cutbacks" in PacifiCare's operations.

---

[2]      In light of our ruling and remand, PacifiCare's request for judicial notice is denied.

In October 2006, the California Department of Insurance (CDI) noted an increase in complaints about PacifiCare's claims handling involving PPOs, and it commenced an investigation into PacifiCare's internal operations early in 2007. In May 2007, CDI initiated a "targeted Market Conduct Examination" (MCE), which concluded PacifiCare had violated the Insurance Code nearly one million times. As a result of the MCE, the CDI recommended that PacifiCare be assessed $325 million in penalties. PacifiCare admitted to approximately 130,000 violations but disputed other CDI findings.

Following a nearly four-year long administrative hearing, an administrative law judge concluded PacifiCare violated the Insurance Code 883,735 times and proposed to penalize PacifiCare in the aggregate amount of $11,518,350. The Commissioner rejected the administrative law judge's proposed decision, ordered additional briefing, and issued his own decision (previously identified as the Decision).

The Decision concluded that during the course of the CDI investigation, PacifiCare engaged in over 900,000 acts that violated the Unfair Insurance Practices Act (UIPA) (Ins. Code, § 790 et. seq.) Specifically, the Commissioner concluded the acts violated Insurance Code section 790.03, subdivision (h), which prohibits insurers from "knowingly committing or performing with such frequency as to indicate a general business practice" any of 16 enumerated unfair or deceptive acts. The Commissioner characterized the violations as "ranging from very serious to minimally serious violations."

The aggregate penalty imposed by the Commissioner was $173,603,750. In the Decision, the Commissioner acknowledged the aggregate amount was the largest fine ever issued by the Department of Insurance, but explained "this is the first, and only, UIPA case ever litigated to either a proposed or final decision. All the other matters settled long before the litigation and penalty phase. This matter also has no parallel in either number of violations found or maximum potential penalty. No other insurer has violated UIPA or other provisions of the Insurance Code hundreds of thousands of times.

And no other insurer has repeatedly misrepresented its business practices, failed to correct the root causes of its violations, or ignored its statutory obligations to the extent shown herein. In short, this litigation is unprecedented because the depth and breadth of PacifiCare's unlawful actions are unprecedented." (Fn. omitted)

PacifiCare filed a petition for a writ of mandate, challenging the Decision on numerous grounds. Among PacifiCare's many challenges to the various penalty categories were its contentions that three regulations relied upon by the Commissioner in assessing the penalties were *facially* invalid. Thus, PacifiCare's pleading alleged a separate cause of action for declaratory relief, seeking a determination that each of the challenged regulations was invalid *on its face* because it was inconsistent with the language of a governing statute it was intended to interpret.

In an understandable effort to streamline the proceedings, the trial court and the parties agreed to bifurcate the issues and address the cause of action for declaratory relief in a "phase 1" trial, leaving all other issues pertinent to the writ of mandate to be addressed in a "phase 2" trial.

At the conclusion of phase 1, the trial court agreed with PacifiCare that all three challenged regulations were *facially* invalid. The Commissioner sought to immediately appeal that decision. With that goal apparently in mind, the parties and the court agreed to the issuance of a preliminary injunction, enforcing the court's determination that the regulations were invalid; this allowed the Commissioner to immediately appeal the substance of the court's ruling.

The Commissioner then asked the trial court to stay the phase 2 proceedings pending the outcome of the phase 1 appeal. For reasons that are not clearly explained in the record, PacifiCare opposed the stay. In any event, the trial court declined the Commissioner's request for a stay, and the case proceeded to the phase 2 writ of mandate trial with the parties seemingly operating under the assumption that this court would affirm the trial court's determination that the three challenged regulations

7

were invalid. [3] The phase 1 ruling was treated as "'law of the case' (although subject to appellate review)" for purposes of the phase 2 proceedings.

At the conclusion of the phase 2 proceedings, the trial court issued a writ of mandate reversing all 19 categories of penalties. The trial court's statement of decision concluded its determination that the three challenged regulations were invalid provided a sufficient basis, in and of itself, to justify the reversal of each of the 19 penalty categories because the regulations "permeate the analyses and results in the Decision."

The court then reversed 12 of the 19 penalty categories finding that one or more of the invalidated regulations had been improperly relied upon by the Commissioner in assessing it. The court reversed the other seven penalty categories based both on the regulations and on other perceived flaws in the Commissioner's reasoning; of those seven, the trial court concluded no remand was necessary on six. The court then entered a judgment granting PacifiCare's petition for writ of mandate. The judgment incorporated the court's 43-page statement of decision in its entirety.

Both parties promptly filed appeals challenging the phase 2 judgment. We stayed briefing on those appeals pending our decision in *PacifiCare I*.

In September 2018, long after the conclusion of the phase 2 trial, we issued our opinion in *PacifiCare I*; in that opinion we reversed the trial court's determination that the three regulations at issue were invalid. The trial court responded to our ruling by

_____

[3] The Commissioner also asked this court to stay the trial court's phase 2 proceedings, in conjunction with its petition for a writ of supersedeas regarding the injunction itself. The Commissioner asserted, without further explanation, that "[t]he three regulations at issue were an integral part of the Commissioner's legal analysis in his reaching his administrative decision. It is likely that the writ cause of action will be decided before the Court of Appeal reaches a decision on the merits of the Commissioner's appeal. Should the Court of Appeal reverse, the parties will have to relitigate the entire administrative writ proceeding, causing the court and both parties to expend further significant resources and incur significant expense; this does not promote the principles of judicial economy." Regrettably, in hindsight, we denied the request for a stay of the phase 2 trial court proceedings.

8

scheduling a status conference to address the impact of *PacifiCare I* on its writ of mandate decision. At that conference, the parties convinced the trial court it had lost jurisdiction to take any action in light of the pending appeals.

We subsequently issued an order directing the parties to file informal letter briefs addressing whether our opinion in *PacifiCare I* mooted the appeal and cross-appeal from the phase 2 judgment. Both parties responded that the phase 2 appeals were not mooted by *PacifiCare I* because they sought review of distinct issues decided by the court in the phase 2 trial. Thus, in March 2019, we issued an order which lifted the stay on the phase 2 appeals and informed the parties that "[t]he effect of this court's decision in [*PacifiCare I*] on the current appeal and cross-appeal will be considered in conjunction with the appeal and cross-appeal."

After the parties completed their formal briefing of all issues related to the phase 2 trial, we again asked them to provide us with informal letter briefs to address several additional questions: (1) whether the trial court's phase 1 ruling, which was reversed in *PacifiCare I*, affected the scope of arguments made by either party during the phase 2 trial; (2) whether the trial court's phase 1 ruling caused either party to omit any argument it otherwise would have made during the phase 2 trial; and (3) whether the omission of any arguments by either party as a result of the trial court's phase 1 ruling amounted to a waiver or forfeiture of that argument.[4]

## DISCUSSION

The inescapable problem we face here is the fact, as discussed above, that the phase 2 trial which is the focus of this appeal proceeded before this court issued its

---

[4] We also directed the parties to address whether the trial court proceedings were automatically stayed pursuant to Code of Civil Procedure section 916, subdivision (a), during the pendency of *PacifiCare I*. However, in light of our determination that the court's phase 2 ruling must be reversed and remanded for reassessment based on *PacifiCare I*, we need not resolve that issue.

9

opinion in *PacifiCare I*. As a result, when the trial court issued its phase 2 judgment, it lacked the direction provided by *PacifiCare I*. This caused the trial court to rely on its own phase 1 rulings, which we later reversed, as it resolved the phase 2 issues. Try as we might, we find it impossible to salvage any portion of the phase 2 judgment which was the product of such a fundamentally flawed proceeding.

As the trial court acknowledged in its statement of decision (and hence in its judgment incorporating that decision), "the [challenged] regulations . . . permeate the analyses and results in the Decision." We believe the Commissioner was prescient when he argued before the phase 2 trial commenced to our writ panel of this court that a discretionary stay of the phase 2 proceedings should be granted during the *PacifiCare I* appeal because "[s]hould the Court of Appeal reverse, the parties will have to relitigate the entire administrative writ proceeding."

In response to our September 29, 2021 order, PacifiCare acknowledged it intended to raise, for the first time on appeal, an argument that the Commissioner's Decision must be reversed as to several penalty categories because the Commissioner "expressly failed to find *deliberate* violations during the administrative proceedings."

According to PacifiCare, this issue arises out of the fact that in *PacifiCare I* we agreed with its contention that ""'[k]nowingly comitt[ing]'" an act implies the act was done deliberately." (See *PacifiCare I, supra,* 27 Cal.App.5th at p. 417.) We disagree. Our opinion in *PacifiCare I* simply acknowledged a point made long ago by our Supreme Court in *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d. 880, 891 (a litigant must "'demonstrate that the insurer acted deliberately'"), overruled on another ground in *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287. We plowed no new ground there.

PacifiCare also seeks to argue, for the first time on appeal, that the challenged regulations were improperly *applied* in this case. This argument is distinct from the regulatory challenges addressed in *PacifiCare I* which were facial only. As we

10

explained in *PacifiCare I* after PacifiCare had attempted to argue the same point, the claim that a regulation is facially invalid is a purely legal argument; it is entirely unrelated to how the regulation may have been applied. (*PacifiCare I, supra*, 27 Cal.App.5th at p. 403, fn. 6.) An "as applied" argument must be based on the facts of an individual case.[5] As we have repeatedly emphasized, *PacifiCare I* addressed only facial challenges to the contested regulations.

It is well established that factual arguments such as these cannot be raised in the appellate court in the first instance. (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 ["It is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried. Stated otherwise, a litigant may not change his or her position on appeal and assert a new theory. To permit this change in strategy would be unfair to the trial court and the opposing litigant"]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.)

If PacifiCare wants to make those arguments, a remand will provide its only opportunity to do so. Having said that, we are not mandating that the trial court entertain all of these new arguments. In response to our September 29, 2021 order, the Commissioner argued that PacifiCare was explicitly warned that it was required to make any and all arguments during the first writ of mandate trial, and thus that it has waived any arguments it failed to make. We leave it to the trial court to sort out that issue on remand; we express no opinion on the point.

---

[5] In a related argument, PacifiCare asks us to conclude the accumulated penalties assessed by the Commissioner in this case amounted to a violation of "Due Process and Excessive Fines Clauses." While PacifiCare did raise this point in the trial court, the court concluded it was unnecessary to address the issue because its invalidation of the regulations meant "the Commissioner's previous focus on 'single acts' will not be repeated on remand." PacifiCare now asks us to tackle the issue in the first instance because the posture of the case has changed in light of *PacifiCare I*. We decline to do so since we cannot know the impact of *PacifiCare I* on its analysis until the trial court has the opportunity to reassess its writ of mandate decision in light of that opinion.

Finally, the parties argue there are other legal issues we might address prior to remanding the case. We decline to do so. As PacifiCare reminds us, this is a factually complicated case, with multiple intertwined issues. Analyzing some of those issues in isolation, while remanding others to the trial court where they may be further developed or refined, could have unintended consequences and add layers of complexity to an already complicated case. We are convinced the better course is to remand the case as a whole.

On remand, we leave it to the trial court to decide which, if any, aspects of the original writ of mandate judgment it wants to reassess. We place no constraints on the trial court's ability, aided by the parties, to produce an entirely new judgment. This is a do over.[6]

We will end with this.

Code of Civil Procedure section 1094.5 governs judicial review of adjudicatory decisions by administrative agencies. (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 418.) The review may include questions about the agency's "jurisdiction" to proceed, "whether there was a fair trial," and "whether there was any prejudicial abuse of discretion." (§ 1094.5, subd. (b).) An abuse of discretion is established if the administrative agency has failed to proceed "in the manner required by law, [if] the [agency's] order or decision is not supported by the findings, or [if] the findings are not supported by the evidence." (*Ibid*.)

In cases where the administrative decision affects "vested, fundamental rights, . . . and particularly the right to practice one's trade or profession" (*Bixby v.*

---

[6]     It is evident to us that the trial court's task on remand will be difficult, even without adding a layer of appellate analysis into the mix. The 19 penalty categories are each affected, to a greater or lesser extent, by *PacifiCare I*, and thus each will have to be reevaluated. We observe that the Commissioner's Decision provides a useful "summary of issues," which lists the categories in the order they are addressed in the Decision and briefly describes each one. Adhering to both the order and language of that list may streamline the process.

*Pierno* (1971) 4 Cal.3d. 130, 143), the trial court must accord a presumption of correctness to the agency's findings as it exercises independent judgment about whether those findings are supported by the weight of the evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) In all other cases, including this one, the court conducts a substantial evidence review. (Code Civ. Proc., § 1094.5, subd. (c).)

"'In substantial evidence review, the reviewing court defers to the factual findings made below. It does not weigh the evidence presented by both parties to determine whose position is favored by a preponderance. Instead, it determines whether the evidence the prevailing party presented was substantial—or, as it is often put, whether any rational finder of fact could have made the finding that was made below. If so, the decision must stand.'" (*Coastal Environmental Rights Foundation v. California Regional Water Quality Control Bd.* (2017) 12 Cal.App.5th 178, 187-188.)

Although the trial court here acknowledged in its statement of decision that it was bound by the substantial evidence test in reviewing the Commissioner's Decision, the details of its analysis suggest it did not always adhere to that standard. For example, in evaluating whether the evidence supports the Commissioner's finding that PacifiCare failed to maintain certificates of credible coverage (COCC),[7] the court concluded the evidence was insufficient because a particular exhibit cited by page number in the Decision was insufficient, standing alone, to establish the number of violations found by the Commissioner. The court then noted "there is no reporter's transcript reference to support the Commissioner's finding that PacifiCare 'admits to 1,799 instances where the insurer failed to maintain a COCC.'"

In so ruling, the court seemed to suggest it was the Commissioner's burden to cite sufficient supporting evidence for each of his findings in his Decision, and that his

---

[7] This is the first penalty category addressed in the Decision, and the seventh category addressed in the court's statement of decision.

13

failure to do so was grounds to reverse his finding. Not so. The court is obliged to presume the evidence in the administrative record supports the finding; the burden is on PacifiCare, the party challenging the finding, to demonstrate that the evidence in the record is insufficient to support it. "'A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient*. [Citation.]' [Citation.] '[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.'" (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409; *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 284-285.)

In a case such as this, with such an enormous record, the appellant's burden may be daunting. (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 290 [the appellant's burden to provide a fair summary of the evidence "grows with the complexity of the record"].) Nonetheless, that burden remains.

## DISPOSITION

The judgment is reversed, and the case is remanded with instructions to (1) reconsider its writ of mandate decision in light of *PacifiCare I;* (2) determine which, if any, additional or alternative arguments should be addressed in the first instance; and (3) address those arguments and issue a new decision either granting or denying a writ of

14

mandate, in whole or in part. In the interest of justice, the parties shall each bear their own costs on appeal.


                                        GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


ZELON, J.*

   *Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.