Filed 1/28/25  Frank Zimmerman Collective v. City of Vista CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA


| | |
|---|---|
| FRANK ZIMMERMAN COLLECTIVE, | D082921 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2021-00017596-CU-WM-NC) |
| CITY OF VISTA, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Law Office of Jeff Augustini and Jeff Augustini for Plaintiff and Appellant.

Colantuono, Highsmith & Whatley, Alena Shamos and Matthew C. Slentz for Defendant and Respondent.

Frank Zimmerman Collective (FZC) appeals from the judgment against it in its action seeking a writ of administrative mandamus (Code Civ. Proc. § 1094.5) against the City of Vista (the City) arising from the City's denial of FZC's application, in 2019, to operate a medical cannabis dispensary in the

City.  We conclude that FZC's appeal is without merit, and we accordingly affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2018, the electorate voted in favor of a citizen's initiative to allow the operation of medical cannabis dispensaries in the City.  The initiative enacted Chapter 5.94 of the City's municipal code (Mun. Code, § 5.94.010 et seq.)[1] and gave the city manager the authority to promulgate regulations to implement and administer that chapter.  (Mun. Code § 5.94.170, subd. (B).)

The number of dispensaries was to be based on the population of the City.  (Mun. Code, § 5.94.090.)  It is undisputed that, at the time, the City's population supported 11 dispensaries.[2]  Chapter 5.94 set forth a procedure for applicants to apply for permission to operate one of the 11 dispensaries.  (Mun. Code, §§ 5.94.050–5.94.070)

The application process specifically involved applying to receive a Notice of Completed Registration (NCR).  (Mun. Code, § 5.94.070, subd. (A).)  After receiving an NCR and any applicable license required by state law, an applicant would be authorized to open a dispensary after satisfying the other requirements that are generally applicable to retail businesses in the City, namely, obtaining (1) a business license pursuant to Chapter 5.04 of the

_____

[1]    All references to "Mun. Code" or "Municipal Code" are to the Vista Municipal Code.

[2]    The City informs us that because of a decrease in population, the current number of permitted dispensaries is now 10.

Municipal Code (a Chapter 5.04 Business License);[3] and (2) a certificate of occupancy. (Mun. Code, § 5.94.070, subds. (F) & (G).)

The period for submitting an application to receive an NCR opened on January 22, 2019. Applications were assigned priority numbers in the order they were received. (Mun. Code, § 5.94.060 subd. (D).) The City then proceeded through the applications in priority order to determine "as a ministerial duty," whether an application was "complete and accurate" and was not otherwise disqualified. (Mun. Code, §§ 5.94.060 subd. (G), 5.94.070, subd. (A).) One item to be evaluated was whether the proposed dispensary was disqualified because of buffer zone restrictions. (Mun. Code, § 5.94.070, subd. (A)(3).) As relevant here, Municipal Code section 5.94.090, subd. (D) states that "[m]edical cannabis businesses are prohibited within five hundred (500') feet of any other permitted medical cannabis dispensary."

FZC submitted an application for an NCR and was assigned priority number six. FZC proposed to locate its dispensary at 1215 S. Santa Fe Avenue. Another applicant, Riverside County Dispensary and Delivery, Inc. (Riverside), was assigned priority number two. Riverside proposed to locate its dispensary at 1275 S. Santa Fe Avenue, which was within 500 feet of the location proposed by FZC.

---

[3] A Chapter 5.04 Business License is issued by the City's director of finance (Mun. Code, §§ 5.04.020, 5.04.150) and is referred to by the City as a "gross receipts business license." That license implements the provision in Municipal Code section 5.04.300 that "[e]very person who transacts or carries on any business from a fixed place of business in the city" with certain exceptions, "shall pay an annual license tax based upon gross receipts . . . ." Under the Municipal Code "[w]hen an applicant for a medical cannabis dispensary establishes that all requirements have been met for issuance of a license that are contained in Chapter 5.94 and State law, the City will issue" a Chapter 5.04 Business License. (Mun. Code, § 5.04.145.)

On February 13, 2019, the city manager determined that Riverside's application met the applicable requirements and issued an NCR to Riverside. On that same date, the city manager rejected FZC's application because it did not meet the buffer zone requirements. Specifically, FZC's proposed dispensary would be located within 500 feet of Riverside's dispensary.

Chapter 5.94, as enacted by the November 2018 initiative, purported to allow an appeal from a decision made under that chapter. Specifically, Municipal Code section 5.94.120 states that "[a]ny decision regarding approval, conditional approval, denial, suspension or revocation may be appealed to the city council in accordance with the provisions of the Vista Municipal Code." (Mun. Code, § 5.94.120.) However, the Municipal Code contained no provisions relating to such an appeal. Accordingly, the city manager issued a regulation on March 7, 2019, stating that "[s]ince an appellate process is not established by [the City's] Municipal Code, it is not possible to administratively appeal the City Manager's decision to deny, disapprove, or disqualify an application 'in accordance with the provisions of the [the City's] Municipal Code.'"

In June 2019, FZC filed an action in the Superior Court, seeking judicial review of the City's denial of its application (the 2019 Action).[4] The pleadings were later amended to challenge the City's failure to allow FZC to file an administrative appeal challenging the denial of its application.

While the 2019 Action was pending, Riverside completed all the additional requirements to open its dispensary, including obtaining a

---

[4] The 2019 Action was titled *Frank Zimmerman Collective v. City of Vista* (Super. Ct. San Diego County, 2022, No. 37-2019-00029400-CU-WM-NC.) In the instant action, the trial court took judicial notice of the entirety of the 2019 Action, over which it also presided. The record provided to us for this appeal includes only partial documentation from the 2019 Action.

Chapter 5.04 Business License on February 2, 2021. Further, because an NCR is valid for only two years (Mun. Code, § 5.94.070, subd. (D)), Riverside applied for its NCR to be renewed, and a renewal was issued effective February 13, 2021.

On May 14, 2021, the trial court in the 2019 Action ordered the city manager to promulgate rules for administrative appeals under Chapter 5.94 and, thereafter, to allow FZC to file an administrative appeal of the city manager's rejection of FZC's application for an NCR. Three days later, on May 17, 2021, the City adopted a regulation stating that "[a]ny decision made under [Municipal Code] Chapter 5.94 by the City Manager or his/her designee regarding approval, conditional approval, denial, suspension or revocation may be appealed to the City Council. . . . The City Council standard of review shall be de novo. . . ."

FZC filed an administrative appeal with the city council on May 26, 2021, challenging several decisions made by City officials: (1) the decision on February 13, 2019, to grant and issue an NCR to Riverside; (2) the February 13, 2019 denial of FZC's application for an NCR; (3) the issuance of a Chapter 5.04 Business License to Riverside on February 2, 2021; and (4) the issuance of a renewed NCR to Riverside effective February 13, 2021. FZC argued that, for several reasons, Riverside's application for an NCR in January 2019 did not meet the applicable requirements and therefore should have been denied. Therefore, according to FZC, its own application for an NCR should have been approved because the city manager's reason for rejecting it (i.e., FZC's proposed dispensary being located within 500 feet of Riverside's dispensary), would no longer be applicable.

At a hearing on June 15, 2021, the city council denied FZC's appeal. In the written resolution denying the appeal, the city council explained that

"[FZC's] arguments that [Riverside's] application should have been denied are unfounded," and it then addressed each of FZC's contentions. The city council concluded that "[a]s Riverside's application was properly approved by the City and was higher in priority than [FZC's] application, the City properly denied [FZC's] application due to the buffer zone requirements codified at [Municipal Code] section 5.94.090(D)."[5]

In the instant action, FZC challenges the city council's denial of its administrative appeal.[6] Specifically, FZC's operative petition for writ of mandate and complaint for injunctive relief (Petition/Complaint), filed August 9, 2021, alleged that the city council's denial of FZC's appeal was "legally erroneous, not supported by the record, not supported by substantial evidence in the record" and "purposefully avoid[ed] directly addressing several of FZC's actual appellate arguments." FZC named the City as a

---

[5] The city council resolution did not expressly address FZC's challenge to the issuance of a Chapter 5.04 Business License to Riverside. FZC had already challenged the issuance of that license in an appeal filed with the City on February 26, 2021. The city manager, through the city attorney, denied that appeal on March 11, 2021, concluding that FZC was not an aggrieved party with the right to appeal within the meaning of Municipal Code section 5.04.210.

[6] Although not relevant to the issues in this appeal, we note that this action was originally filed on April 21, 2021, as a petition for writ of mandate and complaint for injunctive relief challenging the City's denial of FZC's appeal of the issuance of a Chapter 5.04 Business License to Riverside and the renewal of Riverside's NCR. After the City promulgated regulations permitting FZC to pursue an administrative appeal under Chapter 5.94 and subsequently denied that appeal, FZC amended its pleadings in this action to focus on the city council's decision denying that appeal.

6

defendant/respondent and Riverside as a real party in interest.[7] The Petition/Complaint sought a writ of mandate to "set aside and/or reverse" the City's resolution denying FZC's appeal. It also sought "an injunction requiring the City Council to: (1) set aside and/or reverse its [r]esolution denying FZC's appeal and (2) to revoke [Riverside's] license and renewed NCR, and to instead permit FZC to proceed with the application process for an NCR and medical marijuana dispensary license; and/or (3) schedule another appeal which is not fundamentally unfair . . . ."

In 2023, the parties filed briefing on the merits of FZC's Petition/Complaint and submitted the administrative record for the trial court's consideration, along with additional documents that the trial court judicially noticed. Although the Petition/Complaint alleged a cause of action for injunctive relief, the only relief that FZC sought in its trial court briefing on the merits of the Petition/Complaint was a writ of mandate pursuant to Code of Civil Procedure section 1094.5. After a hearing held on July 14, 2023, the trial court issued a lengthy minute order on August 29, 2023, in which it denied the relief sought by FZC. Judgment was subsequently entered in favor of the City.

---

[7] Although named as a real party in interest, Riverside did not appear in this action, and FZC obtained an entry of default against it. We note that, because FZC seeks a revocation of Riverside's right to operate a dispensary, Riverside is arguably an indispensable party to this litigation. (Code Civ. Proc., § 389.) However, presumably because Riverside was given an opportunity to participate in the city council proceeding (although it did not appear) and was named a real party in interest in this action (and again chose not to appear), the City has not argued, on appeal, that the failure to join Riverside as an indispensable party precludes the relief sought by FZC. As we are ultimately denying the relief sought by FZC in this appeal, we need not, and do not, consider whether the relief sought by FZC would be available despite Riverside's absence in this litigation.

II.

DISCUSSION

A.    *Standard of Review*

FZC appeals from the trial court's denial of a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5.  Under that provision, the trial court inquires "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (Code Civ. Proc, § 1094.5, subd. (b).)

"Except in a limited class of cases involving fundamental vested rights [citation], the trial court reviews the whole administrative record to determine whether the agency's findings are supported by substantial evidence and whether the agency committed any errors of law."  (*Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th 997, 1005.)  Here, because no fundamental vested right of FZC is at issue, we apply a substantial evidence standard.  (*Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359, 367 ["The initial denial of a [conditional use permit] or other license is reviewed by the substantial evidence standard, since until a permit or license is received, no right has vested."].)  " 'When the standard of review is the substantial evidence test . . . it is presumed that the findings and actions of the administrative agency were supported by substantial evidence,' " and " 'the burden is on appellant to show there is no substantial evidence whatsoever to support the findings of the [agency].' "  (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 419 (*Young*).)

"Where, as here, the underlying administrative mandamus case does not involve a fundamental vested right, on appeal ' "we review the administrative decision, not the superior court's decision." ' " (*Young, supra*, 10 Cal.App.5th at pp. 418–419.) " '[W]e do not "undertak[e] a review of the trial court's findings or conclusions. Instead, 'we review the matter without reference to the trial court's actions.' " ' " (*City of Hesperia v. Lake Arrowhead Community Services Dist.* (2019) 37 Cal.App.5th 734, 761 (*City of Hesperia*).)[8]

Further, in evaluating a writ of administrative mandamus, "[w]e exercise independent judgment on legal issues, including the interpretation of municipal ordinances. [Citation.] 'Courts interpret municipal ordinances in the same manner and pursuant to the same rules applicable to the interpretation of statutes.' [Citation.] That said, a city's interpretation of its own ordinance is ' "entitled to deference" in our independent review of the meaning or application of the law.' " (*Harrington v. City of Davis* (2017) 16 Cal.App.5th 420, 434 (*Harrington*).) "[T]he degree of deference accorded an agency's interpretation is ' " 'not susceptible of precise formulation, but lies somewhere along a continuum,' " ' or, in other words, is '*situational.*' " (*Id.* at pp. 434–435.) " '[B]ecause the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special

---

8    FZC's appellate briefing focuses, to a large extent, on its concern that the trial court applied an improper standard of review and improperly lowered the requirements set forth in Chapter 5.94 of the Municipal Code and, in other respects, committed "clear and reversible legal error." We understand FZC's contentions. However, our role in this appeal is to review the city council's decision without regard to the trial court's actions. (*City of Hesperia, supra*, 37 Cal.App.5th at p. 761.) In so doing, we have conducted a thorough review, as required by Code of Civil Procedure section 1094.5, to ensure that the city council did not abuse its discretion and conducted a fair proceeding.

familiarity with satellite legal and regulatory issues. It is this 'expertise,' expressed as an interpretation . . . , that is the source of the presumptive value of the agency's views.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 219.)

B.  *The City's Arguments Regarding Mootness and Standing*

As an initial matter, we address the City's arguments regarding mootness and standing.

1.  *Mootness*

The City contends that this controversy is moot because "[t]he City issued all available licenses for the 11 medical cannabis dispensary businesses" authorized by Chapter 5.94 of the Municipal Code, and, accordingly, "[t]here are no more licenses available for any purported 'waitlist' applicants."9  Under those circumstances, according to the City, FZC's action should be dismissed as moot because the courts cannot grant "any effectual relief."

"Appellate courts generally will neither decide controversies that are moot nor render decisions on abstract propositions. [Citation.] 'A case is moot when the decision of the reviewing court "can have no practical impact or provide the parties effectual relief." ' " (*Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1485 (*Steiner*).)

With the exception of the specific mootness determination we make in section II.C.3, *post*, as to one of FZC's arguments, the City's general contention that this litigation is moot lacks merit. The relief that FZC seeks

_____

9   To establish that no open spots for cannabis dispensaries exist in the City, on June 28, 2024 and August 16, 2024, the City requested that we take judicial notice of certain documents establishing that fact. We grant the requests.

10

is (1) a revocation of Riverside's NCR and renewed NCR as improperly approved, and (2) the issuance of an NCR to FZC instead. The fact that all of the 11 available dispensaries are currently in operation is not relevant because the relief FZC seeks entails removing one of those dispensaries from operation by obtaining the revocation of Riverside's right to operate.[10]

2. *Standing*

The City also contends that, to the extent FZC argues that Riverside was improperly issued an NCR, FZC lacks standing to make that challenge. According to the City, FZC has standing only with respect to one of its arguments (discussed in section II.C.3, *post*), which does not depend on arguing that Riverside failed to meet the requirements for the issuance of an NCR.

As the trial court observed, there are two very different issues that arise under the umbrella of standing in this case: (1) whether FZC had standing in the city council to pursue its challenge to the issuance of the NCRs to Riverside; and (2) whether FZC has standing to pursue this litigation challenging the city council's decision. The first issue involves an interpretation of the City's law to determine whether it affords a party in FZC's position a right to challenge the issuance of an NCR to a competitor. The second issue requires us to examine whether FZC falls within the scope of parties authorized to pursue a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5.

---

[10] One of the documents that we have judicially noticed indicate that Riverside was issued a second renewal of its NCR on February 13, 2023. Although the record contains no evidence that FZC has challenged the second renewal of Riverside's NCR, we construe FZC's challenge to the original approval of Riverside's NCR in 2019 to encompass all subsequent renewals.

11

As to the first issue, we understand the city council to have implicitly accepted that FZC had standing to pursue an administrative appeal to challenge the City's issuance of an NCR to Riverside. Specifically, instead of rejecting FZC's administrative appeal based on a lack of standing, the city council decided the merits of FZC's appeal, concluding that the city manager properly issued an NCR to Riverside. The city council's decision to allow FZC to challenge the city manager's issuance of an NCR to Riverside is a reasonable interpretation of the applicable Municipal Code provision and the associated regulations. Specifically, Municipal Code section 5.94.120 allows for an appeal of "*[a]ny* decision regarding *approval*, conditional approval, denial, suspension or revocation." (Italics added.) The regulation implementing that part of the Municipal Code similarly states that "*[a]ny* decision made under [Municipal Code] Chapter 5.94 by the City Manager or his/her designee regarding *approval*, conditional approval, denial, suspension or revocation may be appealed to the City Council." (Italics added.) Because the applicable provisions provide for an administrative appeal of the *approval* of an NCR, it is reasonable for the city council to have allowed FZC to pursue its challenge to the issuance of an NCR to Riverside. We defer to the city council's reasonable interpretation of its own law. (*Harrington*, *supra*, 16 Cal.App.5th at p. 434.)

Next, as to whether FZC has standing to pursue its petition for writ of administrative mandamus, a party may bring a writ of administrative mandamus if it is "beneficially interested" in the outcome of the administrative decision that is being challenged. (Code Civ. Proc, § 1086.) A party is beneficially interested if it has " 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' " (*People ex rel. Dept. of*

12

*Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 986.) Case law holds that if a party is statutorily authorized to institute an administrative appeal, that party also has standing to file a writ of administrative mandamus to challenge the result of the administrative appeal. Specifically, as our Supreme Court has explained, "We are aware of no authority which holds that a person permitted by statute to participate as an interested party in the administrative hearings and to take appeals at the administrative level is, nevertheless, without a sufficient interest in the result to test the legality of the final decision before a court of law. Indeed, it seems to us that elemental principles of justice require that parties to the administrative proceeding be permitted to retain their status as such throughout the final judicial review by a court of law, for the fundamental issues in litigation remain essentially the same." (*Bodinson Mfg. Co. v. California Employment Com.* (1941) 17 Cal.2d 321, 330; see also *Memorial Hosp. of So. Cal. v. State Health Planning Council* (1972) 28 Cal.App.3d 167, 178 ["It is settled law in California that if a person is permitted by statute to appear and take part in an administrative hearing, he is sufficiently beneficially interested to seek a writ of mandate to review the administrative decision or disposition."].) Here, because FZC had standing, pursuant to the City's law, to appeal to the city council, FZC also has standing to pursue this petition for a writ of mandamus to challenge the city council's decision.

C.     *The City Council Did Not Abuse Its Discretion in Denying FZC's Appeal*

FZC contends that the city council abused its discretion with respect to three different issues that FZC raised during the administrative appeal. We consider each in turn.

13

1.    *FZC's Challenge to the Owner Consent Document Submitted by Riverside*

As part of the process for reviewing an application for an NCR, Chapter 5.94 directs the city manager to determine whether the application is "complete and accurate" in setting forth the required items. (Mun. Code, § 5.94.060, subd. (G).) Among other things, an application is required to include the following items:

> "5. Proof that the applicant owns or currently leases the property. If the property is being leased, rented or purchased under contract, a copy of such contract or fully executed lease must be submitted with the application.
>
> "6. If the property is being rented or leased, the applicant must submit a signed and notarized authorization acknowledging that the current owner of the property is aware of the intended use as a medical cannabis business and consents to such use." (Mun. Code, § 5.94.050, subd. (B).)

FZC contended in its appeal to the city council that Riverside's application did not comply with item No. 6 because the owner consent form submitted by Riverside was "facially and demonstrably false" in stating that that Riverside's landlord consented to a medical cannabis business on the property. FZC argued that Riverside " 'hoodwinked' the City and provided a *bogus* Owner Consent that made it appear—falsely—that the owner consented to the use of the property for a dispensary when in fact it did not."

The signed and notarized owner consent document submitted by Riverside was dated January 10, 2019. It stated, "I, or the business entity I represent, am aware that the applicant, [Riverside], is in the process of applying to the City of Vista for a permit to operate a medical cannabis retail outlet (dispensary) on the property described above in conformance with the provisions applicable local and state law. I acknowledge and expressly consent to this intended use." In contending that this document was

14

knowingly false, FZC relies on the contents of the lease that Riverside submitted to the City as part of its application. That lease was fully executed as of January 10, 2019, which is the same day the owner consent document was signed.

In some respects the lease is consistent with the use of the property as a medical cannabis dispensary. Specifically, paragraph 7.1 of the lease states, "The Premises shall be used and occupied by Tenant for Cannabis Dispensary and Office Use purposes and for no other purposes without the prior written consent of Landlord." (Bolding and underlining omitted.) However, in an addendum titled "Non-Smoking Agreement," the lease contains a statement disallowing that use. Specifically, following a paragraph prohibiting the smoking of tobacco on the premises, the addendum states, "Notwithstanding any law to the contrary, the growing, cultivation, sale, storage, or use in any form of marijuana (cannabis), for any purpose, is NOT PERMITTED in or about the unit, at any time, by Tenant(s) or Tenant(s) guests, invitees or friends."

The city council rejected FZC's argument that Riverside's owner consent document was inaccurate. Specifically, the city council's resolution stated that FZC's argument was "unfounded" because "[Riverside] submitted a signed and notarized authorization from its landlord acknowledging and allowing [Riverside's] leased premises to be used as a medical cannabis dispensary as required by [Municipal Code] section 5.94 050(B)(6)." The city council also observed that the city manager "reasonably relied on the information provided for in [Riverside's] application as its application was submitted under penalty of perjury as required by [Municipal Code] section 5.94.050(B)(19)."

15

FZC argues that the city council's decision was not supported by substantial evidence because it "could not in good faith have determined [Riverside] was authorized as required to use of the property as a cannabis business and/or the inclusion of the prohibitory language in the Addendum was a scrivener's error." According to FZC, "the City possessed clear documentary evidence from [Riverside's] own application confirming that its landlord did not consent to using its property as a dispensary." (Italics omitted.)

We reject FZC's argument because substantial evidence supports a finding that the owner consent document submitted by Riverside accurately reflected an agreement by Riverside's landlord that a medical cannabis business was allowed at the property. When, as here, an agency decision is reviewed for substantial evidence in a writ proceeding, "[i]t is for the agency to weigh the preponderance of conflicting evidence, 'as we may reverse its decision only if, based on the evidence before it, a reasonable person could not have reached the conclusion reached by it.'" (*Young*, *supra*, 10 Cal.App.5th at p. 419.) Riverside's lease contained conflicting statements as to whether a medical cannabis business was allowed at the property. However, the provision prohibiting the sale of cannabis was buried in the second paragraph of the "Non-Smoking Agreement" addendum, whereas the provision of the lease allowing the premises to be used for a medical cannabis dispensary was prominently located in the body of the lease as the sole specified use of the premises. Further, the owner consent document prominently set forth the owner's agreement that the property may be used as a medical cannabis dispensary, and it was expressly signed under penalty of perjury. Based on that evidence, the city council could reasonably find that the owner, in fact, did consent to that use of the property, and that the prohibition on cannabis

16

use appearing in the "Non-Smoking Agreement" addendum was a mistake that the parties did not intend to include in the lease.

In sum, substantial evidence supports a finding that Riverside submitted an accurate and complete owner consent document as required by Municipal Code section 5.94.050, subdivision (B)(6), and FZC has not met its burden to establish otherwise.

>2.     *FZC's Challenge to the Site Plan Submitted by Riverside*

We next consider FZC's contention that Riverside's application should have been rejected because it did not include an adequate site plan of the proposed dispensary.  Municipal Code section 5.94.050, subdivision (B)(7) states that an application must include "[a] site plan describing the property with fully dimensioned interior and exterior floor plans including:  electrical, mechanical, plumbing, and disabled access compliance pursuant to Title 24 of the State of California Code of Regulations and the Americans with Disabilities Act.  Any improvements or alterations to the property that require building permits must be submitted to the Building and Safety Division separately for review/approval."

The reference in Municipal Code section 5.94.050, subdivision (B)(7) to "Title 24" is to the California Standards Building Code.  "The California Building Standards Law (Health & Saf. Code, §§ 18901–18949.31) creates a process for adopting statewide building standards, which are codified in title 24 of the California Code of Regulations as the California Building Standards Code.  The California Building Standards Commission is required to publish an edition of the California Building Standards Code every three years.  (§ 18942, subd. (a).)"  (*Temple of 1001 Buddhas v. City of Fremont* (2024) 100 Cal.App.5th 456, 467.)  "Title 24 is also referred to as the

California Building Standards Code." (*Oh v. Teachers Ins. & Annuity Assn. of America* (2020) 53 Cal.App.5th 71, 83.)

As part of its application, Riverside attached a "Site Plan," composed of 11 pages of technical drawings, along with photographs and an explanation regarding the parking spaces associated with the property. However, FZC contends Riverside's submission was not adequate because the reference in Municipal Code section 5.94.050, subdivision (B)(7) to "Title 24 of the State of California Code of Regulations and the Americans with Disabilities Act" called for a detailed site plan that was equivalent to the plans required to obtain a building permit.

In the administrative appeal that FZC filed with the city council it argued, "Title 24 . . . requires all building plans that are submitted to be 'construction ready.' Yet the plans [Riverside] submitted were expressly stamped 'NOT FOR CONSTRUCTION,' thereby facially establishing they did not comply with Title 24 as required. Significantly FZC notes [Riverside's] plans as submitted to the City contained no construction-level detail whatsoever. . . . Further, despite being required both by Title 24 and the [Americans with Disabilities Act], [Riverside's] site plans failed to provide details for proposed occupancy and exiting, electrical load calculations and a single line diagram, mechanical plans (including hood and HVAC 20 information), energy compliance information, disabled access compliance information, and also failed to provide a complete hazardous materials checklist. . . . Notably, these requirements are mandated by City policy vis-a-vis proposed tenant improvements at commercial/industrial sites." FZC explained that it interpreted Municipal Code section 5.94.050, subdivision (B)(7) as containing demanding requirements "to ensure that only the 'best applicants' who took the time and effort, and had the necessary level of

18

knowledge and expertise, to submit *detailed, construction-ready legally compliant plans* 'got through' while those who did not were weeded out." (Italics added.) FZC explained that, in contrast to Riverside, its own application "contained detailed, Title 24-compliant, construction-ready plans."

One of the exhibits to FZC's administrative appeal was a declaration from the 2019 Action that an architect submitted in opposition to a special motion to strike (Code Civ. Proc., § 425.16). The architect stated that he was asked to "review [Riverside's] site plan information in light of . . . Chapter 5.94 . . . of the [City's] Municipal Code . . . , Title 24, the [Americans with Disabilities Act] and the City's Tenant Improvement regulations, and to provide an opinion as to whether it complied with *all* of those requirements."[11] (Italics added.) The architect opined that "[Riverside's] site plan materials do not satisfy *those* requirements." (Italics added.) The architect then went on to provide a list of items that he stated "did not satisfy the City's stated requirements," which presumably also included the City's requirements for tenant improvements. One item on the list stated,

---

11　To clarify what he meant by "the City's Tenant Improvement regulations," the architect attached as an exhibit, a document titled "Tenant Improvement – Commercial/Industrial," in which the City specifies the documents that must be submitted when a person seeks approval to make tenant improvements. According to that document, the submission should include, among other things, the following: "Three (3) sets of plans to scale," composed of "Site Plan [¶] b. Floor plan showing equipment; what is being built (partitions, walls) [¶] c. Details." The required detail is described as "2. Two (2) sets of details of occupancy and exiting [¶] 3. Two (2) sets of electrical load calcs/single line diagram [¶] 4. Two (2) sets of plumbing schematics/gas and water pipe sizing [¶] 5. Two (2) sets of mechanical plans, i.e. hood details, heating/air conditioning information [¶] 6. Two (2) sets of energy compliance information [¶] 7. Two (2) sets of disabled access compliance[.]"

19

"Submitted site plan sheets that were clearly marked 'NOT FOR CONSTRUCTION' and/or that were not stamped for approval by [an] architect or engineer as required, and most of the layouts contained absolutely no construction-level detail." Specifically addressing Municipal Code section 5.94.050, subdivision (B)(7), the architect stated that "[g]enerally speaking" compliant site plan materials "including detailed sheets and fully dimensioned plans . . . should exceed 30 pages in length," but Riverside's site plan was "only 10 pages in length."

At the city council hearing on the administrative appeal, counsel for FZC only very generally and briefly referred to the argument that Riverside's site plan was deficient, explaining that it "failed to meet mandatory standards that were both in the ordinance itself and in the City's own requirements for what it requires for tenant improvements of commercial properties." FZC's counsel primarily deferred to a general contractor, Aaron Bagley, to discuss Riverside's site plan. Bagley did not attempt to bolster FZC's position that a site plan was required to be construction ready. Instead, Bagley interpreted Municipal Code section 5.94.050, subdivision (B)(7) to provide that a site plan "doesn't necessarily have to be construction-ready documents, but it does have to at least address how they are going to make all of these items Title 24 compliant." Bagley explained that "[a]t the very minimum," Riverside's site plan "could have at least listed notes" stating that all of the items will comply with Title 24 regulations, but it did not do so. According to Bagley, Riverside's site plan reflected "just a really early phase, at best an early preliminary design." Bagley acknowledged that "[b]uilding permits must be submitted to the building and safety division separately for review and approval," but he interpreted Municipal Code section 5.94.050,

20

subdivision (B)(7) to state that a site plans "needs to be pretty darn close to a construction-ready document."

The city council rejected FZC's challenge to the adequacy of Riverside's site plan. The resolution denying FZC's appeal stated, "[Riverside] submitted the site plans required by [Municipal Code] section 5.94.050(B)(7). [Municipal Code] Chapter 5.94 did not require [Riverside] to submit construction ready plans as [FZC] contends."

FZC argues that the city council abused its discretion because it "purposefully and improperly recast and mischaracterized FZC's challenge to [Riverside's] site plan." (Emphasis and capitalization omitted.) According to FZC, it "did *not* contend Chapter 5.94 itself required 'construction ready plans.'" FZC contends that its position was that Riverside "essentially needed to satisfy all of the requirements for obtaining building permits -- which they did not."

We are not persuaded by FZC's contention that the city council misunderstood its argument and therefore addressed the wrong issue. As we read FZC's administrative appeal, FZC unambiguously interpreted Municipal Code section 5.94.050, subdivision (B)(7) as stating that a site plan must "comply with Title 24." Based on that premise, FZC observed that "Title 24 . . . requires all building plans that are submitted to be 'construction ready.'"[12] FZC concluded, therefore, that Municipal Code section 5.94.050,

---

[12] We note that neither in the city council proceeding, nor in this appeal, has FZC provided any specific citation to Title 24 to support its statement that "Title 24 . . . requires all building plans that are submitted to be 'construction ready.'"

21

subdivision (B)(7), like Title 24, also requires construction-ready plans.[13] FZC explained that the drafters of the initiative that enacted Chapter 5.94 intentionally set up a requirement that applicants "submit detailed, *construction-ready* legally compliant plans." (Italics added.) FZC cannot fault the city council for evaluating the argument that FZC actually *did* make in its administrative appeal.

FZC now states that it really meant to contend that Riverside "needed to satisfy all of the requirements for obtaining building permits." However, if the city council had understood FZC to be making that argument, it would have been justified in rejecting that interpretation as well, based on our interpretation of Municipal Code section 5.94.050, subdivision (B)(7). Notably, here, the second sentence of Municipal Code section 5.94.050, subdivision (B)(7) expressly distinguishes the procedures for obtaining a building permit from the procedures for obtaining an NCR. The first sentence of Municipal Code section 5.94.050, subdivision (B)(7) requires the submission of a site plan. The second sentence states that "[a]ny improvements or alterations to the property that require building permits must be submitted to the Building and Safety Division separately for review/approval." Based on this language, we interpret the site plan required in the first sentence to be something *different* from the documents to be submitted to obtain a building permit.

In sum, regardless of whether FZC argued to the city council that Municipal Code section 5.94.050, subdivision (B)(7) required construction

---

[13] In fact, FZC makes that same argument in this appeal, stating that "the requirements of Title 24 and the [Americans with Disabilities Act] effectively require *all site plans* submitted to be detailed and essentially 'construction ready' in form and detail." (Italics added.)

ready plans, or that it required plans that were sufficient to obtain a building permit, FZC has not established that the city council abused its discretion in rejecting FZC's administrative appeal on that issue.

      3.     *FZC's Contention That the Buffer Zone Requirement Does Not Apply Until Another Dispensary Is Issued a Chapter 5.04 Business License*

FZC's final argument concerns the City's application of the buffer zone provisions of Municipal Code section 5.94.090, subdivision (D). That provision states, "Medical cannabis businesses are prohibited within five hundred (500') feet *of any other permitted medical cannabis dispensary*." (Italics added.)

FZC contends that the City improperly interpreted the phrase "permitted medical cannabis dispensary" in Municipal Code section 5.94.090, subdivision (D) to mean a dispensary that has been issued an NCR, as occurred with respect to Riverside in February 2019. According to FZC, the City should have interpreted the phrase "permitted medical cannabis dispensary" to mean a dispensary that has completed *all* of the requirements to open for business, including receiving a Chapter 5.04 Business License. Because Riverside did not complete all those requirements until 2021, FZC argues that "the City prematurely denied FZC's application." FZC contends that it should have also been issued an NCR, along with Riverside, setting up a race between it and Riverside to see which party first completed all the requirements to open for business, and only at that point should the buffer zone requirement have been applied. In response, the City makes a series of arguments to support its contention that a "permitted medical cannabis dispensary" means a dispensary that has received an NCR.

The dispute over the City's interpretation of Municipal Code section 5.94.090, subdivision (D) is moot because our resolution of that controversy

23

" 'can have no practical impact or provide the parties effectual relief.' " (*Steiner*, *supra*, 220 Cal.App.4th at p. 1485.) Riverside is currently operating a dispensary and has been issued all of the necessary permits and licenses to do so. We have concluded above that FZC has not succeeded in either of its arguments challenging Riverside's authorization to operate a dispensary. Therefore, even were we to conclude that "*any other permitted medical cannabis dispensary*" in Municipal Code section 5.94.090, subdivision (D) means a dispensary that has been granted all of the necessary permits and licenses to operate, FZC would not obtain any effectual relief. Regardless of whether, as FZC contends, the City was premature in disqualifying FZC, the dispensary proposed by FZC is now disqualified even under FZC's interpretation of Municipal Code section 5.94.090, subdivision (D) because it would be closer than 500 feet to Riverside's *operating* dispensary. In other words, even if there should have been a race as FZC contends, the race is over.[14]

Because the controversy is moot, we need not, and do not, address it. (*Steiner*, *supra*, 220 Cal.App.4th at p. 1485 [appellate courts will not "decide controversies that are moot"].)

---

[14] Indeed, even if FZC were to have prevailed in obtaining a revocation of Riverside's authorization to operate a dispensary, the dispute over the proper interpretation of "permitted medical cannabis dispensary" in Municipal Code section 5.94.090, subdivision (D) would still be moot. Specifically, if Riverside's NCR was revoked, it would not matter whether, as the City contends, "permitted medical cannabis dispensary" means a dispensary that has received an NCR, as Riverside would no longer have an NCR and the buffer zone restrictions would not be implicated.

## DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.


                                                               IRION, Acting P. J.

WE CONCUR:


KELETY, J.


RUBIN, J.